**UNITED STATES of America, Appellee,**

v.

**Bernard Ray YOUNG, Appellant.**

**No. 88–5307.**

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 12, 1989.

Decided May 30, 1989.

James E. Carlon, Pierre, S.D., for appellant.

David L. Zuercher, Asst. U.S. Atty., Pierre, S.D., for appellee.

Before JOHN R. GIBSON and MAGILL, Circuit Judges, and HEANEY, Senior Circuit Judge.

MAGILL, Circuit Judge.

After a two-day jury trial, Bernard Ray Young (Young) was convicted of assault resulting in serious bodily injury, in violation of 18 U.S.C. §§ 1153 and 113(f). The district court[1] sentenced Young to seventy-eight months in prison to be followed by two years of supervised release. We affirm the conviction and sentence.

---

1. The Honorable Donald J. Porter, Chief Judge, United States District Court for the District of South Dakota.

## I.

Young, his common-law wife Rose Brave Hawk, Eva Marshall, and John Four Horns gathered at Beverlyn Brave Hawk's house in St. Francis, South Dakota, sometime during the day of January 13, 1988. Several children were also at the house that day, and there was testimony that other adults stopped by, but the five adults named are the central figures in the incident. The group spent the day and evening drinking beer and playing Yahtzee. In the course of the day, they made two beer runs to Kilgore, Nebraska. By late evening, the five adults were all intoxicated.

Late that night or early the next morning, John Four Horns was seriously injured when someone came into the bedroom where he was sleeping and beat him about the head with a baseball bat. At trial, Eva Marshall, Rose Brave Hawk and Young gave conflicting testimony as to what happened that night.

Eva Marshall and John Four Horns were sleeping in Young's bedroom at the time of the assault. Marshall testified that she awoke to find Rose Brave Hawk standing over her with a stick or bat and John Four Horns lying on the floor next to the cot-like bed. As Marshall watched, Young took the bat away from Rose Brave Hawk and hit Four Horns about the head.

Rose Brave Hawk testified that Young and John Four Horns had a fight earlier in the evening, during which Young was "cut up." She further testified that she saw Young take a baseball bat into the bedroom, where Eva Marshall and Four Horns were passed out on the bed, and hit Four Horns one time. Rose Brave Hawk attempted to take the bat away from Young but left the room when she failed to get the bat.

Bernard Young admitted that he and John Four Horns fought earlier in the evening, but denied striking Four Horns with a bat. Young testified that he went into the bedroom when he got up to use the bathroom during the night. He saw Four Horns lying on the floor, turned him over to see what was wrong, saw the blood on his face, and called for help.

After the assault, John Four Horns got up and walked to the living room, contending that he was alright and did not want any medical treatment. Someone summoned an ambulance, however, which took Four Horns to the Rosebud Indian Health Hospital. Doctors at the Rosebud Hospital determined that Four Horns had suffered a serious brain injury and arranged to have him flown to Sioux Falls. At Sioux Falls, Four Horns underwent neurosurgery for an injury apparently caused by a severe blow to the head.

When the ambulance left, according to the testimony of twelve-year-old Theresa Lynn Brave Hawk (Beverlyn Brave Hawk's daughter) and ten-year-old Christy Ann Red Bird (daughter of Vida Red Bird, who was also at the house), Young cleaned up the blood on the floor and hid the bat in a pantry, telling the children not to reveal the location of the bat. When investigators came to examine the scene, they took Rose Brave Hawk into custody. Young had left the house. About 10:30 on the morning of the 14th, Young made a phone call from Valentine, Nebraska to special investigator Phillip Charles. Young asked investigator Charles if they had Rose Brave Hawk in jail and, when he heard that she was there, said "She had nothing to do with it, I did it." Young told investigator Charles that he would come in to the station, but never showed up.

Young was indicted by the grand jury on February 11, 1988, and charged with two counts of Assault: Count I, Assault with a Dangerous Weapon; and Count II, Assault Resulting in Serious Bodily Injury. He entered a plea of not guilty to both charges. Pursuant to a stipulation, the trial court ordered pretrial discovery on March 9, 1988. When Young did not receive any discovery by April 5, he filed motions for discovery and continuance. On April 11, 1988, defendant, having received only part of the discovery materials, filed a motion to dismiss. Defendant filed a renewed motion to dismiss when additional discovery materials, including an alleged confession by the defendant, were provided by the government only a few days prior to

the date scheduled for trial. Defendant's motions were denied. The trial court did, however, continue the trial to allow the deposition of Dr. Sanchez (the neurosurgeon who operated on Four Horns) who, because of bad health, could not travel to Pierre.

After a two-day trial, the jury returned a verdict acquitting Young on the charge of assault with a dangerous weapon and convicting him on the charge of assault resulting in serious bodily injury. The court sentenced Young to seventy-eight months imprisonment and a two-year term of supervised release.

## II.

■ Young contends that the timing of the delivery of discovery deprived him of a fair trial. He argues that the government withheld discovery until shortly before trial, making it impossible for Young to investigate or prepare a defense to matters contained in the discovery materials. The argument focuses on the government's refusal to turn over Young's oral statement to investigator Charles until April 13, 1988, some twenty-three days before trial began.

Under the federal rules, a defendant is entitled to production of his own oral statements which the government intends to use during trial only if the statements were made "in response to interrogation by any person then known to the defendant to be a government agent." Fed.R.Crim.P. 16; *United States v. Johnson,* 562 F.2d 515 (8th Cir.1977). Young's statement to investigator Charles that "She didn't do it; I did it" was voluntary, not in response to interrogation. Furthermore, we find no prejudice to Young since he received discovery of the statement twenty-three days before trial. *See United States v. Levine,* 700 F.2d 1176 (8th Cir.1983).

## III.

Young argues that the trial court erred in denying Young's request for a jury instruction on the lesser included offenses of Simple Assault and Assault by Striking, Beating or Wounding. A trial court should give a lesser included offense instruction if:

(1) a proper request is made; (2) the elements of the lesser offense are identical to part of the elements of the greater offense; (3) there is some evidence which would justify conviction of the lesser offense; (4) the proof of the element or elements differentiating the two crimes is sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser included offense * * *.

*United States v. Thompson,* 492 F.2d 359, 362 (8th Cir.1974). The court may properly exclude an instruction "when the evidence, taken in its entirety, does not provide a rational basis for a jury to find the elements necessary to support the lesser-included offense instruction * * *." *United States v. Neiss,* 684 F.2d 570, 571 (8th Cir.1982), *citing United States v. Elk,* 658 F.2d 644, 648 (8th Cir.1981).

Young submitted proposed jury instructions regarding the lesser included offenses and objected when the trial court refused to give the proposed instructions. At trial, as on appeal, the controversy concerning the propriety of the lesser included instructions centered on the fourth element from *Thompson.* The focus of Young's argument was different at trial than on appeal, however. At trial, he focused on the nature of Four Horns' injury, arguing that because "there is an inference from the jury that the defendant fully recovered and has no lasting injuries whatsoever from the alleged assault," the jury could find Young guilty of assault by striking, beating or wounding, or simple assault, but innocent on the charge of assault resulting in serious bodily injury. On appeal, Young shifts his focus from the nature of Four Horns' injuries to the identity of the assailant. In his brief on appeal, Young argues that even if the jury found that Young hit Four Horns with the bat, the jury could have found that Rose Brave Hawk also hit Four Horns and that Brave Hawk's blow caused Four Horns' injury.

■ Under Rule 30 of the Federal Rules of Criminal Procedure, "[n]o party may assign as error any portion of the charge or

omission therefrom unless that party objects thereto before the jury retires to consider its verdict, *stating distinctly the matter to which that party objects and the grounds of the objection.*" Fed.R. Crim.P. 30 (emphasis added). Here, Young properly objected to the trial court's refusal to give the lesser included offense instruction but he attempts to raise new grounds for the objection for the first time on appeal. This court has held that a party must call attention to the specific fact situation that would require giving the lesser included offense instruction. *United States v. Lincoln,* 630 F.2d 1313 (8th Cir. 1980); *United States v. Neiss,* 684 F.2d 570 (8th Cir.1982). Young never presented the district court with the argument that Rose Brave Hawk struck Four Horns and caused the injury. He should have given the district court an opportunity to rule on this theory. Because Young's objection was insufficient for purposes of Rule 30, we review the trial court's failure to give the instruction under the "plain error" standard. *See* Fed.R.Crim.P. 30; *Lincoln,* 630 F.2d at 1321.

▪ The evidence presented at trial was sufficient to sustain, and indeed preponderated heavily in favor of, the jury's verdict that Young was guilty of assault resulting in serious bodily injury. We acknowledge that the record is not completely devoid of evidence which *might* support a finding that Young struck Four Horns but did not deliver the blow that caused the brain injury. Given Young's continuing claim of complete innocence and the lack of any direct evidence that Rose Brave Hawk assaulted Four Horns, however, the inference that Brave Hawk—not Young—inflicted the injury is speculative at best. Under these facts, the trial court's failure to give the lesser included offense instructions simply was not error.

## IV.

Young challenges the constitutionality of the Federal Sentencing Guidelines on grounds that the Guidelines violate the separation of powers principle and involve an unlawful delegation of authority. These arguments are foreclosed by the Supreme Court's recent decision in *Mistretta v. United States,* —— U.S. ——, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). *See United States v. Nunley,* 873 F.2d 182 (8th Cir.1989) (holding Sentencing Guidelines not facially unconstitutional on delegation, separation of powers or due process grounds).

▪ Young also challenges the district court's application of the Guidelines, contending that application of Guideline § 3E1.1 penalized him for exercising his constitutional right to trial. Section 3E1.1 provides for a downward adjustment of two levels when a defendant "clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." Young does not allege that he clearly demonstrated a recognition of personal responsibility. Instead, he argues that the judge refused to adjust his sentence downward because Young insisted on going to trial, and that his insistence that a jury pass on his claim of innocence cannot be a valid ground for denial of a shorter sentence.

Young's argument fails to recognize that Guideline § 3E1.1 authorizes reductions in sentences of defendants who are tried as well as those who plead guilty. Guideline § 3E1.1(b) reads, "A defendant may be given consideration under this section without regard to whether his conviction is based upon a guilty plea or a finding of guilt by court or jury or the practical certainty of conviction at trial." Not even a guilty plea guarantees a reduction as a matter of right. § 3E1.1(c). As a recent Fifth Circuit decision points out:

> [A]ccepting responsibility for a crime entails admitting the crime, while trial strategies predicated upon a claim of innocence entail denial of the crime. A defendant who maintains her innocence at trial, and then purports to accept responsibility afterward, may have a difficult time persuading the trial judge that her later position is sincere rather than merely convenient. Cases where the convicted defendant succeeds may be rare as a factual matter, but they are not barred by law.

*United States v. Thomas,* 870 F.2d 174 (5th Cir.1989).

The issue of accepting responsibility is for the trial court to decide. The commentary to § 3E1.1 expressly reminds us that "[t]he sentencing judge is in a unique position to evaluate the defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review and should not be disturbed unless without foundation." The district court found nothing at trial, in the presentence report, or in any filing which indicates an acceptance of responsibility by Young. We find no error. Accordingly, we uphold Young's conviction and the sentence imposed by the district court.

Affirmed.