904 F.2d 52
 284 U.S.App.D.C. 232
 UNITED STATES of America
v.
Ronald GIBBS, Appellant.
UNITED STATES of America
v.
Bruce JOHNSON, a/k/a Willie Ruff, Appellant.
UNITED STATES of America
v.
Randy Ray WHITEHEAD, Appellant.
UNITED STATES of America
v.
Harold A. BENNETT, Appellant.
 Nos. 88-3158, 88-3181 to 88-3183.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued March 1, 1990.
Decided May 29, 1990.
 
 Appeals from the United States District Court for the District of Columbia (Criminal Action Nos. 88-00081-03, 88-00081-01, 88-00081-02, & 88-00081-04).
 Barbara R. Miller, Washington, D.C., appointed by this court, for appellant in No. 88-3183.
 Daniel M. Schember, Washington, D.C., appointed by this court, for appellant in No. 88-3158.
 Michael A. Levin, with whom Gregory C. Denaro was on the brief, for appellant in No. 88-3181.
 Warren E. Gorman, Chevy Chase, Md., was on the brief, for appellant in No. 88-3182.
 John W. Kern, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., Washington, D.C., John R. Fisher, Norman C. Bay, were on the brief, for appellee in all cases.
 Before WALD, Chief Judge, MIKVA and EDWARDS, Circuit Judges.
 Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.
 Dissenting opinion filed by Circuit Judge MIKVA.
 HARRY T. EDWARDS, Circuit Judge:
 
 
 1
 Appellants, Harold Bennett, Ronald Gibbs, Bruce Johnson, and Randy Whitehead, were each found guilty of possession with intent to distribute five grams or more of crack cocaine, following their arrest during which officers seized 15.5 grams of crack cocaine, firearms, and ammunition. Appellants raise several issues on appeal, most notably that the evidence was insufficient to convict them and that the trial judge's refusal to instruct the jury on the lesser-included offense of mere possession was error. Because we find that the trial judge erred in refusing to give the lesser-included offense instruction, we reverse and remand as to all appellants.
 
 I. BACKGROUND
 
 2
 On the afternoon of February 17, 1988, three plain clothes officers in an unmarked police car began to follow a rental car that was being driven by Gibbs, and in which Bennett, Johnson, Whitehead and another man were riding as passengers. After apparently discovering that they were being followed by the police, Gibbs began driving erratically, as the other appellants looked back at the pursuing car and then sunk down in their seats. Gibbs first swerved in and out of one parking lot, then pulled into a second parking lot, and finally stopped abruptly beside a trash dumpster. Johnson exited from the front of the car and threw out a loaded automatic pistol. After exiting from the back seat of the car, Whitehead tossed a loaded pistol (wrapped in a shirt) back into the car, then struggled with the police as they arrested him.
 
 
 3
 After all of the occupants of the car were in custody, a search revealed a little over ten grams of crack under the seats of the car; this crack was hidden in false bottoms of two Morton salt containers. Ten of twelve rocks of crack in one of the Morton salt containers were wrapped. A bag with another 4.686 grams of crack was apparently found exposed on the car floor, between the front passenger seat and the door frame. The officers also recovered a loaded rifle and ammunition in the trunk of the car, and bullets for a .38 caliber weapon were found in the glove compartment. Johnson was carrying $576 in small bills in his pocket. In total, the police seized approximately 15.5 grams of crack cocaine, $576 in cash, and several firearms with ammunition. No use or packaging paraphernalia was discovered.
 
 
 4
 At trial, the prosecution introduced evidence that Johnson had previously been arrested for disorderly conduct, while carrying a large sum of cash and driving a vehicle not rented in his own name. The Government also introduced evidence that Whitehead had once sold cocaine to a police officer.
 
 
 5
 At the conclusion of trial, defense counsel for all four appellants sought to have the jury instructed on the lesser-included offense of simple possession, in addition to the greater offense of possession with intent to distribute. This request was denied by the trial judge. Later, during their deliberations, the jury sent out a written question asking the trial judge whether the defendants could be acquitted on the charge of possession with intent to distribute, but convicted on the weapons charges. Apparently, the jury was concerned about the intent to distribute charge. The trial court instructed the jury, however, that they could not acquit the defendants of possession with intent to distribute, yet convict on carrying or using weapons in connection with an intent to distribute. Thus, there is some indication the jury believed that the defendants had illegal possession of weapons, and wanted to convict on weapons charges, but it appears they were not convinced that the defendants intended to distribute the drugs. But, in order to convict on the weapons charges, they also had to convict on the intent to distribute charge.
 
 
 6
 The trial judge subsequently expressed some serious misgivings over his failure to give the lesser-included offense instruction:
 
 THE COURT:
 
 7
 ... the more I think about it, I don't understand how it happened, except for one thing. It was not told to me--well, I guess--it was not conveyed to the jury during the trial--or was it--what is the street value of the cocaine found in the car?
 
 GOVERNMENT:
 
 8
 At about $100 a gram, $1500.
 
 THE COURT:
 
 9
 What I didn't give enough thought to I think is a lesser included charge. I am not sure it is an error.
 
 
 10
 Each of the four appellants was convicted of possession with intent to distribute five grams or more of cocaine (21 U.S.C. Sec. 841). The driver, the front passenger, and one rear passenger--Gibbs, Johnson, and Whitehead, respectively--were also convicted on the charge of using or carrying a firearm during and in relation to a drug trafficking crime (18 U.S.C. Sec. 924(c)(1)). Additionally, Johnson was convicted for possession of an unregistered machine gun (26 U.S.C. Sec. 5861(d)).
 
 II. ANALYSIS
 
 11
 Appellants, separately and collectively, raise several bases for reversal. We review each of these in turn.
 
 
 12
 A. Opinion Evidence on Whitehead's Prior Drug Sale
 
 
 13
 As a preliminary matter, Whitehead objects that opinion testimony by an officer regarding the nature of the substance previously sold by Whitehead was inadmissible. It would indeed have been desirable for the Government to have introduced more reliable evidence than an officer's assertion that the substance sold was cocaine. However, the jury's attention was called to the fact that the officer was not a licensed chemist and that Whitehead was not yet convicted of distributing narcotics on that earlier occasion. It was also reasonable to infer from the properly admitted testimony--of an officer "undercover ... to purchase illegal drugs" who had purchased some substance from Whitehead--that Whitehead had sold illegal drugs on a prior occasion. Accordingly, the admission of the officer's opinion that the substance sold was cocaine is not reversible error.
 
 B. Bennett's Motion to Sever
 
 14
 Appellant Bennett, the back seat passenger who was in no way connected to possession of any of the guns, asserts that his trial should have been severed from that of his co-defendants. This court, however, has repeatedly declared that joint trials may be preferred, given the heavy and increasing criminal case load in our trial courts. See United States v. Manner, 887 F.2d 317, 324 (D.C.Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 879, 107 L.Ed.2d 962 (1990). Severance is due only if the evidence against one's co-defendants is "far more damaging" than the evidence facing the accused, making it unreasonable to expect a jury to compartmentalize the evidence. Id.; see also United States v. Sampol, 636 F.2d 621, 647 (D.C.Cir.1980). Where virtually all the evidence adduced at trial concerns a common course of conduct during one transaction or event, as is the case here, severance need not be granted. That two incidents concerning prior crimes of Bennett's co-defendants were raised at trial does not require severance where the common chord of evidence bears upon the guilt or innocence of all four defendants.
 
 C. Sufficiency of the Evidence
 
 15
 Each of the four appellants requests reversal on the grounds that the Government introduced insufficient evidence to support a conviction for possession with intent to distribute. Because of the respect owed by appellate courts to jury verdicts, we review the evidence and all legitimate inferences in the light most favorable to the Government. United States v. Hernandez, 780 F.2d 113, 120 (D.C.Cir.1986); United States v. Pardo, 636 F.2d 535, 547 (D.C.Cir.1980).[1]
 
 
 16
 We have regularly and definitely stated that, while proximity to drugs is not enough to prove possession, evidence of some other factor--including connection with a gun, proof of motive, a gesture implying control, evasive conduct, or a statement indicating involvement in an enterprise--coupled with proximity may surpass the minimum threshold of evidence needed to put the question of guilt to a jury. See, e.g., United States v. Dunn, 846 F.2d 761, 763-64 (D.C.Cir.1988) (" '[P]resence, proximity or association may establish a prima facie case of drug possession when colored by evidence linking the accused to an ongoing criminal operation of which that possession is a part'.... [The defendant's] connection to the gun [on a nearby couch] suggests he exercised control over the drugs in the house." (citation omitted)); Hernandez, 780 F.2d at 117 (proximity with a gesture, motive or purpose in using the item, or proof that the "defendant took evasive action in response to the presence of police" is sufficient to put possession to the jury); Pardo, 636 F.2d at 548. Since circumstantial evidence is sufficient to establish guilt, even though one clue alone, such as presence, may be insufficient to put the case to the jury, a combination of such clues may narrow the possibilities enough to prove guilt to a reasonable person.
 
 
 17
 In the case at hand, case law makes it clear that each appellant could be found to have had joint possession of all 15.5 grams of crack found in the car. In United States v. Richardson, 504 F.2d 357, 358-59 (5th Cir.1974), cert. denied, 420 U.S. 978, 95 S.Ct. 1406, 43 L.Ed.2d 659 (1975), the court held that all three passengers in a car in which a sawed-off shotgun was found hidden inside a bag under the seat could be convicted for possession of the gun. The Fifth Circuit reasoned that it had "repeatedly recognized that possession of contraband ... 'may be shared with others, and is susceptible of proof by circumstantial as well as direct evidence.' " Id. at 359 (citation omitted). Our own circuit has similarly established that "possession may be sole or joint," and that "two or more persons" may concurrently have constructive possession of contraband. See United States v. Eaton, 808 F.2d 72, 74 (D.C.Cir.1987).
 
 
 18
 Intent to distribute may be inferred from a combination of suspicious factors, such as possession of a relatively large amount of cash, weapons, more than a minimal amount of narcotics, and activity in an area of "high narcotic trafficking." See United States v. Payne, 805 F.2d 1062, 1066 (D.C.Cir.1986); United States v. Raper, 676 F.2d 841, 845 (D.C.Cir.1982); United States v. Brett, 872 F.2d 1365, 1370 (8th Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 322, 107 L.Ed.2d 312 (1989). Such factors were present in this case; and, while this evidence need not necessarily have convinced a jury that the appellants were guilty, it was sufficient to prove possession with intent to distribute.
 
 
 19
 Johnson possessed a loaded machine gun (which he tried to abandon), carried $576 in small bills, was near 37 rocks of crack cocaine, including some separately wrapped rocks, all while traveling in a moving vehicle in an area known for high drug traffic. The evidence was sufficient to support a conviction.
 
 
 20
 Likewise, the evidence was sufficient to convict Whitehead, who wielded a loaded pistol--which he attempted to throw away--and sat next to two containers of drugs in a car driving through a heavy narcotics trafficking area. He reportedly turned, bent down, and took some action below the line of vision of the officers while the car was being followed. Evidence was also introduced to prove that he had previously sold cocaine.
 
 
 21
 Also, on this record, Gibbs, the driver, could have been found to have had constructive possession of the loaded rifle and ammunition found in the trunk. His possession of the trunk key is a sufficient basis for such constructive possession. United States v. Martinez, 588 F.2d 495, 498-99 (5th Cir.1979). Furthermore, as the driver and only passenger found to have keys to the car, Gibbs is held to a higher level of accountability for its contents. United States v. Zabalaga, 834 F.2d 1062, 1065 (D.C.Cir.1987) ("[I]t appeared that the appellant had actual control over the car and the drugs therein, for only he had keys to the car."). He took evasive action, driving into one parking lot and then another, then suddenly stopping by a trash dumpster. As the driver of a group in possession of drugs and guns, in a car travelling through a narcotics trafficking area, Gibbs could be found by reasonable jurors to be guilty of possession with intent to distribute.
 
 
 22
 Finally, we hold that the Government introduced enough evidence against Bennett to sustain his conviction. Bennett entered the car with armed men. Bennett, moreover, obviously was very near to the drugs in the car. The evidence at trial indicated that the passengers of the car made an effort to hide the drugs under the seats; this testimony would be especially probative against Bennett, as the middle passenger in the back seat, thus in the clearest view of the officers following behind. While a jury might have doubted this testimony regarding the defendant's alleged attempt to bend down and hide the drugs, and while merely turning to look at a trailing police car is not by itself probative of any guilt, the assertions and credibility of the witness describing an attempt to "bend down as if doing something with their hands" were for the jury to consider.
 
 
 23
 Drawing all inferences in favor of the Government, we simply cannot conclude that a man who voluntarily entered a car with other individuals who possessed several weapons, who appeared to hide something under the seats of a car in which narcotics were later found, and who was travelling in a neighborhood known for high drug traffic, could not be found to be a drug trafficker by a reasonable jury.[2]
 
 
 24
 D. Instructing the Jury on Lesser Included Offenses
 
 
 25
 All four appellants challenge the District Court's denial of their request for a lesser-included offense instruction. At trial, appellants asked the court to instruct the jury on the lesser-included offense of simple possession, in addition to the greater offense of possession with intent to distribute. On the facts of this case, we find that the lesser-included offense instruction should have been given as to all appellants, and we therefore reverse and remand.
 
 
 26
 "A defendant is entitled to an instruction on a lesser included offense if there is any evidence fairly tending to bear upon the lesser included offense, 'however weak' that evidence may be." United States v. Thornton, 746 F.2d 39, 47 (D.C.Cir.1984) (quoting Belton v. United States, 382 F.2d 150, 155 (D.C.Cir.1967)); see also Payne, 805 F.2d at 1067 (same); United States v. Tarantino, 846 F.2d 1384, 1400 (D.C.Cir.) ("The trial court is required to give a proper instruction, and to instruct on the defendant's theory of the case if supported by the evidence"), cert. denied, 488 U.S. 867, 109 S.Ct. 174, 102 L.Ed.2d 143 (1988). The "test" for determining when the lesser instruction is required is:
 
 
 27
 whether there was a reasonable basis on which the jury could find the defendant guilty of [the lesser offense] beyond a reasonable doubt yet entertain a reasonable doubt [as to the greater offense].
 
 
 28
 United States v. Sinclair, 444 F.2d 888, 890 (D.C.Cir.1971); see also Mathews v. United States, 485 U.S. 58, 63, 108 S.Ct. 883, 890, 99 L.Ed.2d 54 (1988) ("[A] defendant is entitled to an instruction as to any recognized defense for which there exists evidence for a reasonable jury to find in his favor.") In the present case, a reasonable jury could have found the appellants guilty of simple possession of cocaine, yet not guilty of possession with intent to distribute.
 
 
 29
 The four appellants plus a fifth person were in possession of 15.5 grams of cocaine and various weapons and ammunition. However, this is not a case in which the defendants were in possession of a quantity of drugs so large as to defy a suggestion of personal use. See Payne, 805 F.2d at 1067 (lesser-included offense instruction unnecessary when defendants possessed forty pounds of marijuana); Thornton, 746 F.2d at 48 (instruction unnecessary where "no one could claim, and appellant did not argue, that [$44,000 worth] of heroin, at such a degree of purity, was consistent with merely personal use"); see also United States v. Espinosa, 827 F.2d 604, 615 (9th Cir.1987) (sixty-nine pounds of cocaine), cert. denied, 485 U.S. 968, 108 S.Ct. 1243, 99 L.Ed.2d 441 (1988); United States v. Rogers, 504 F.2d 1079, 1084 (5th Cir.1974) (427 pounds of marijuana worth between $30,000 and $60,000), cert. denied, 422 U.S. 1042, 95 S.Ct. 2655, 45 L.Ed.2d 693 (1975). In the present case, the Government presented no evidence, nor any expert testimony, that five adult men could not possibly consume 15.5 grams [.54 ounces] of cocaine. Indeed, in United States v. Levy, 703 F.2d 791, 793 and n. 7 (4th Cir.1983), the court refused to consider 4.75 ounces [135.71 grams] of cocaine, worth more than $14,000, to be per se inconsistent with personal use. Absent any evidence to the contrary, we cannot say that a mere 15.5 grams of cocaine was inconsistent with personal use.
 
 
 30
 Nor is this a case in which the Government has presented clear evidence unmistakably indicating an intent to distribute. See, e.g., Thornton, 746 F.2d at 42-43, 48 ("within the apartment, in plain view, were articles employed to prepare heroin for distribution," including rubber gloves, surgical face masks, a large number of small plastic bags, chemicals used for the preparation of heroin, and devices used to prepare drugs for sale). Instead, the Government relies almost exclusively on the presence of guns to indicate such an intent. While the presence of weapons may be a factor in considering whether the defendants intended to distribute the cocaine, see Payne, 805 F.2d at 1065-66, the mere presence of weapons is not, in and of itself, dispositive of such intent. For example, the cautious buyer may feel the gun improves his bargaining position; or, the drug user may also be a thief who robs persons at gunpoint to support his habit. As the court in Levy pointed out, "a frequent consequence of addiction is the recourse to property crimes in order to finance the 'trips'. That is not a commendable inference to draw insofar as [the appellant] was concerned. However, the possibility is not a remote one." 703 F.2d at 792.
 
 
 31
 We have no doubt that the evidence was sufficient to convict the appellants of possession with intent to distribute; but, when the issue is the propriety of a lesser-included offense instruction, the test is whether a reasonable jury could nonetheless find the appellants guilty only of simple possession. See United States v. Burns, 624 F.2d 95, 104 (10th Cir.) ("the evidence was sufficient to support the jury's inference that these appellants possessed cocaine with an intent to distribute, but the jury was free also not to draw such an inference. [The appellants] were entitled to a jury consideration of the offense of simple possession"), cert. denied, 449 U.S. 954, 101 S.Ct. 361, 66 L.Ed.2d 219 (1980).
 
 
 32
 The rationale for giving the lesser-included offense instruction is both logical and appealing:
 
 
 33
 [w]here one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of some offense, the jury is likely to resolve its doubts in favor of conviction.
 
 
 34
 Keeble v. United States, 412 U.S. 205, 212-13, 93 S.Ct. 1993, 1998, 36 L.Ed.2d 844 (1973) (emphasis in original). In the present case, the jury was put in exactly this quandary. In fact, during deliberations the jury sent a written message to the trial judge asking whether they could convict the appellants on the weapons charges (using and carrying a firearm in relation to a drug trafficking offense) but acquit on the intent to distribute charges. This suggests that the jury may have thought that the evidence was sufficient to find the possession of weapons, but insufficient to find an intent to distribute. Nonetheless, once the trial judge instructed the jury that they could not convict on the weapons charges without finding an intent to distribute, the jury resolved its doubts in favor of conviction on all charges. The trial judge recognized his possible error when he said, after reading the jury's note and discovering that the street value of the cocaine was only about $1500, "What I didn't give enough thought to I think is a lesser included charge. I am not sure it is an error."
 
 
 35
 Viewing the evidence as a whole, we cannot say that a reasonable jury could not have found the appellants guilty only of simple possession. Where the quantity of drugs was small, the car contained no drug paraphernalia nor trafficking tools beyond the loaded weapons, the Government proffered no expert testimony that the quantity and packaging of drugs were inconsistent with personal use, and the trial judge himself realized that he may have made a mistake in failing to provide the lesser-included offense instruction, it was reversible error for the trial judge not to give the lesser-included offense instruction.
 
 E. Additional Errors Assigned
 
 36
 Appellants raise several miscellaneous claims. First, Whitehead maintains that the jury should have been instructed as to two lesser D.C.Code offenses purportedly within 18 U.S.C. Sec. 924(c)(1). Under Schmuck v. United States, 489 U.S. 705, 109 S.Ct. 1443, 1450, 103 L.Ed.2d 734 (1989), offenses are lesser-included only when evidence of one crime "invariably" would prove the other. That is not the case with either of the offenses asserted by Whitehead to be lesser included offenses of knowing use of a firearm in relation to a drug trafficking crime. One of those offenses, Sec. 22-3204, requires proof that possession of the firearm involved was unlicensed, and the other, Sec. 22-3214, includes only offenses involving certain firearms.
 
 
 37
 The next alleged error is raised by all appellants, who assert that the trial judge's initial failure to specify that in order to convict on the charge presented, the jury had to find that the defendants possessed five grams of cocaine. The judge stated instead that the jury had to find that the defendants possessed "some measurable amount of the substance." Considering the failure of counsel for any of the appellants to object to this instruction below, and the fact that the prosecutor brought this error to the attention of the trial judge, who then corrected the error (repeating his correction twice), we find no reversible error.
 
 
 38
 Appellants also maintain that the prosecutor included prejudicial statements in his closing statement. We find no merit to this objection. Appellant Johnson's own attorney introduced evidence of Johnson's prior arrest for disorderly conduct, to establish prior police contact with him and his girlfriend in order to lay a foundation for his theory of a conspiracy by the testifying officers to frame Johnson. When the prosecutor referred to this arrest in his closing statement, saying, "Last summer he was involved in an incident involving Mr. Johnson. You know that Mr. Johnson was up around J Street, the open air drug market," Gibbs' attorney objected (without articulating a specific basis for the objection). Certainly the prosecutor was free to refer to that testimony.
 
 
 39
 Finally, Bennett and Whitehead challenge the sentences they received. As we have reversed all four convictions with instructions to retry the appellants, we need not review their sentences.
 
 III. CONCLUSION
 
 40
 Because we find that the District Court should have instructed the jury on the lesser-included offense of simple possession, we reverse and remand as to all appellants.
 
 
 41
 It is so ordered.
 
 MIKVA, Circuit Judge, dissenting:
 
 42
 The four defendants, riding in a rental automobile in a neighborhood known for its narcotic trade, were observed and followed by Washington, D.C. police. When the defendants discovered that they were being followed, the driver, Gibbs, began to swerve in and out of parking lots, and the other occupants of the automobile were observed looking back at the policeman's car and slinking down in their seats. The rental auto stopped suddenly beside a trash dumpster, and one of the defendants, Johnson, exited from the front seat, throwing out a loaded machine gun as he fled. Another defendant, Whitehead, exited the back seat while tossing a loaded pistol wrapped in his shirt back into the car. He struggled with the police as they arrested him. A search of the car revealed 37 rocks of crack cocaine, a loaded rifle and ammunition in the trunk of the car, and bullets for still another weapon in the glove compartment. Defendant Johnson had over $500 in small bills in his pockets. At trial, evidence was introduced linking two of the defendants to arrests for previous conduct related to the sale of drugs.
 
 
 43
 The four defendants were found guilty by a jury. The court finds no error in the evidence that was admitted, nor in the refusal of the trial court to sever the trial of Bennett, one of the defendants. The court acknowledges that the evidence was sufficient to sustain the convictions of all four defendants. Nevertheless, the court reverses the convictions and orders a new trial on the ground that the trial judge should have instructed the jury to consider the possibility that the defendants were simply out for a ride with loaded guns and 37 rocks of crack cocaine, and that their crime might be mere "possession" of the drugs as opposed to possession with intent to distribute. The court holds that the trial judge should have given the jury a "lesser-included offense" instruction. I dissent from the notion that the jury must be given the opportunity to do such verdict bargaining under the facts of this case.
 
 
 44
 Judicial literature is all too full of appellate judges drawing gossamer lines between instructions given and instructions sought. Reversal-wary trial judges resort to "red-book" instructions which have been given the "Good Instruction Seal of Approval" in prior cases. If the trial judge has been burned often enough, he or she will give virtually any instruction sought by either side, as long as it is found in the red book. It is not surprising that jury charges frequently sail over the jury's comprehension. The charges more resemble a potpourri of black-letter criminal law than a statement of legal principles relevant to the case being tried. Rarely are such bloated instructions helpful to the fact-finding task for which the jury is responsible. We appellate judges might be well-advised to become wary of instruction-based appeals, and recognize that the particular nuances of a particular instruction may not be the sine qua non of a fair trial.
 
 
 45
 I recognize that the lesser-included instruction can have a more significant effect on the jury's deliberations, and might well have led to a different result in this case. Indeed, as the court points out, the jurors sought some help in arriving at a verdict and might have grabbed at a lesser-included instruction as a way out of their internal disagreements. But the fact that the jurors found some disagreements along the way to unanimity is not a reason for giving them an inappropriate crutch. If the jury believed the facts that were presented, as apparently it did, then it was neither necessary nor proper to give a lesser-included offense instruction.
 
 
 46
 The lesser-included offense doctrine was constructed to protect against a very specific form of prosecutorial abuse. The courts recognize that if the state can prove a defendant guilty of one offense, it may be tempted to obtain a harsher punishment by charging him with a greater offense and gambling that the jury will resolve any doubts in favor of punishing the defendant. See Keeble v. United States, 412 U.S. 205, 212-13, 93 S.Ct. 1993, 1997-98, 36 L.Ed.2d 844 (1973). Accordingly, the Supreme Court has instructed that a "defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater." Id. at 208, 93 S.Ct. at 1995 (emphasis added); see also United States v. Sinclair, 444 F.2d 888, 890 (D.C.Cir.1971). The sole question presented before this court, therefore, is whether a rational jury--considering all of the evidence--could have acquitted these defendants of possession with intent to distribute but not also have acquitted them of simple possession. In this case, I think no reasonable jury could have done so.
 
 
 47
 To acquit on possession with intent to distribute but convict on simple possession, the jury would have had to determine that there was a legitimate dispute as to the distinguishing element: the intent to distribute. See, e.g., Keeble, 412 U.S. at 213, 93 S.Ct. at 1998 (lesser-included offense instruction required where "the nature of petitioner's intent was very much in dispute at trial"). By contrast, "refusal to give the lesser-included offense instruction is not error when defendant's testimony is completely exculpatory and, if believed, could only lead to acquittal, and the kind of reconstruction of events needed to support a lesser charge is neither fairly inferable from the testimony nor pointed out by defense trial counsel." Sinclair, 444 F.2d at 890 (emphasis added).
 
 
 48
 Our decision in Sinclair, is instructive. In Sinclair, the defendant was arrested by police inside a store during a looting incident. Although Sinclair was not holding any store merchandise at the time, the trial court instructed the jury on the charge of second-degree burglary, which requires proof of entry and intent to commit a crime once inside, but refused to instruct on the lesser offense of unlawful entry. We affirmed the trial court on the ground that it was not "fairly inferable" that the accused committed the lesser but not the greater offense. 444 F.2d at 891. The court explained that the "abstract and speculative possibilities" that the defendant entered the store merely to follow other people who had broken in (but not to loot himself), or "that the defendant took it upon himself to commit an unlawful entry because he was frightened outside," did not provide a "reasonable basis" for the jury to conclude that he had committed only the lesser offense. 444 F.2d at 890.
 
 
 49
 The courts have also upheld a refusal to grant a lesser-included offense instruction where the defense affirmatively placed the critical element in dispute. In United States v. Young, 875 F.2d 1357, 1359 (8th Cir.1989), the defendant admitted to having struck a man with a bat but claimed that another individual who was present also hit the victim and in fact inflicted the critical injury. The Eighth Circuit held that the trial court's refusal to instruct on simple assault along with assault resulting in serious bodily injury was not plain error. 875 F.2d at 1359-60. The court stated:
 
 
 50
 We acknowledge that the record is not completely devoid of evidence which might support a finding that Young struck [the victim] but did not deliver the blow that caused the brain injury.... [H]owever, the inference that Brave Hawk--not Young--inflicted the injury is speculative at best. Under these facts, the trial court's failure to give the lesser included offense instructions simply was not error.
 
 
 51
 Id. at 1360.
 
 
 52
 The trial judge's decision in this case was firmly supported by the holdings in Keeble, Sinclair, and Young. Here, the defendants did not present any evidence that they merely possessed (but did not intend to distribute) the cocaine present in the automobile. Nor is the possibility of mere possession "fairly inferable" from the testimony. The majority offers three reasons for concluding that a jury could fairly infer that the defendants merely intended to possess (and not distribute) the crack found in their car. None of these reasons, however, finds any basis in the record.
 
 
 53
 First, the majority states that the quantity of drugs present in the car was "small" and hence consistent with personal use. Maj. Op. at 59. This characterization merely reflects the majority's own opinion about what is a small quantity of crack cocaine; it has no foundation in the record. The majority notes that since other circuits have found 135.71 grams of cocaine not inconsistent with personal use, "we cannot say that a mere 15.5 grams of cocaine was inconsistent with personal use." Maj. Op. at 58. But the majority appears to group crack together indiscriminately with untreated cocaine. Drugs are not fungible: a few grams of pure heroin may be consistent with distribution while half a pound of marijuana is not. Likewise, crack and cocaine have different dosages, different effects, and different patterns of use. In this case, the car contained 37 rocks of crack cocaine--enough to provide more than seven doses for each individual in the car. Absent some reason to dispute the jury's conclusion that this amount exceeded what is appropriate for personal use, I cannot understand the majority's decision to substitute its own speculation.
 
 
 54
 Second, the majority attempts to draw some inference from the absence of certain drug-dealing paraphernalia in the car. Maj. Op. at 59. The majority observes that the "car contained no drug paraphernalia nor trafficking tools beyond the loaded weapons." Id. If anything, that evidence has a reverse cut. The crack cocaine here could not have been consumed without a pipe with which to smoke it, but no pipes or other tools suggesting personal use were found with the appellants in their car. The majority ignores that there was other evidence probative of drug-dealing and that none of the parties carried crack directly on their person as one would expect private consumers to do.
 
 
 55
 All of the "paraphernalia" and other evidence in the car was consistent with distribution, and distribution alone. We have consistently recognized that the guns the appellants possessed--a loaded machine gun, a loaded .357 magnum, and a loaded rifle with 30 shots in its clip--are consistent with, and probative of, drug distribution. In another case involving similar, high-powered, offensive weapons, we noted that "substantial dealers in narcotics possess firearms ... such weapons are as much tools of the trade as more commonly recognized paraphernalia." United States v. Payne, 805 F.2d 1062, 1065 (D.C.Cir.1986).
 
 
 56
 In addition to the guns, several other pieces of evidence support the finding that Johnson, Whitehead, and Gibbs were engaged in drug distribution. Johnson was carrying over $500 in small bills. Whitehead was linked by police testimony to a prior drug sale. And Gibbs drove the car containing the drugs, Johnson, and Whitehead, and took evasive action to avoid their detection. Considering these factors together--high-powered, offensive weapons, cash, criminal history, and strategic efforts to evade police investigatory efforts--all of the evidence and all of the testimony supported the conclusion that these three defendants were engaged in distribution and not simple possession. This was not a Sunday afternoon ride in the park.
 
 
 57
 Finally, the majority attempts to draw an inference from the fact that the "trial judge himself realized that he may have made a mistake." Maj. Op. at 59. In essence, the majority's position is that because the judge was troubled by his decision not to give a particular instruction, he committed reversible error. The majority's view would require reversal whenever a judge discussed his or her concerns openly. This cannot be the law. Appellate courts must examine what the judge decided, not expressions of doubt that may find their way into the record. The majority would read the word "not" out of the trial judge's statement, "I am not sure it is an error." In any event, the trial judge ultimately expressed confidence in his decision, stating: "I have [a] ... responsibility to instruct them on the law as I understand it to be.... What the court did will speak for itself."
 
 
 58
 The majority's decision, then, seems to me to be an unwise extension of the "fairly inferable" language of Sinclair. The court maintains that such an extension is compelled by our statements in United States v. Thornton, 746 F.2d 39, 47 (D.C.Cir.1984). There, we opined that a defendant is entitled to an instruction on a lesser-included offense if there is "any evidence fairly tending to bear upon the lesser included offense, 'however weak' that evidence may be." Thornton, however, still requires some evidence. It does not mandate a lesser-included offense instruction anytime a court could hypothesize a set of facts which would make the evidence consistent with personal use. Yet this is precisely what the court has done. The majority speculates that defendants Gibbs, Johnson, and Whitehead may be modern-day crack pirates, stealing drugs at gunpoint for their personal consumption, or alternatively, that the defendants are cautious purchasers concerned about their safety in the hazardous drug market. Maj. Op. at 59. These theories, or any facts to support them, were never presented to the jury. That such facts exist is highly improbable. Instead, all of the evidence, as noted, was consistent with the distribution of crack cocaine.
 
 
 59
 The imprudence of the majority's course is demonstrated by the result in this case. The court reverses the conviction of Bruce Johnson--a man found with a machine gun and 37 rocks of crack cocaine, driving in a car in a neighborhood known for public drug sales, with $576 in small bills in his pocket--on the ground that he could reasonably have been found to have simply possessed that cocaine without intending to distribute it. The court further holds that Randy Whitehead--linked to prior drug sales, carrying a .357 magnum, riding in a car containing 37 rocks of crack cocaine, taking action to hide these drugs under the seats, and further trying to discard his gun after concealing it in a shirt--should be retried because he might simply have possessed the crack cocaine for his personal use. Finally, it holds that Ronald Gibbs--the driver in an open-air drug market, possessing a loaded rifle, transporting two other armed men and 37 rocks of crack cocaine through the area, and taking evasive action to avoid police detection--should be retried for simple possession. I do not believe that any of these conclusions are compelled by the lesser-included offense doctrine or the prior decisions of this court.
 
 
 60
 In sum, the majority allows bald speculation to tip the scales of justice against the full weight of the evidence and the jury's decision. I believe this is an unwarranted invasion of the jury's province and a dangerous extension of our court's precedent.
 
 
 61
 I recognize that the incriminating combination of evidentiary facts does not apply to defendant Bennett. Since his presence in the car was the only direct evidence linking him to a distribution plan, the jury could have reasonably found him to be guilty of possession alone. He and he alone was entitled to the benefit of a lesser-included offense instruction. Whatever can be inferred from his mere presence in this automobile loaded with miscreants and their wares and tools, the absence of the attenuating proof applicable to the others makes mere possession a possibility. The very difference in the fact situation applicable to Bennett as compared to the other three defendants demonstrates that Johnson, Whitehead, and Gibbs were not entitled to the possibility of receiving a lesser verdict than they received. The record, unencumbered by the majority's speculations, links each of these three defendants to crack cocaine distribution and not simple possession. I dissent.
 
 
 
 [1]
 Although we normally permit readjudication to remedy an error in the conduct of trial, "[t]he same cannot be said when a defendant's conviction has been overturned due to a failure of proof at trial, in which case the prosecution cannot complain of prejudice, for it has been given one fair opportunity to offer whatever proof it could assemble." Burks v. United States, 437 U.S. 1, 16, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978). The Double Jeopardy clause of the fifth amendment to the Constitution would therefore preclude a second trial here in the case of any appellant whose guilt was not adequately proven at trial
 
 
 [2]
 It is true, as Bennett points out in his brief, that two decades ago this court stated that the presence of three guns plus a quantity of heroin in a car with three men might indicate a common "purpose to commit a crime involving guns, [but] does not indicate a joint venture to commit a wrong" involving "the possession, sale, or concealment of narcotics." United States v. Bethea, 442 F.2d 790, 793 (D.C.Cir.1971) (emphasis added). But Bethea did not develop a black letter rule depriving district courts of discretion to put appropriate cases to the jury. In this case, we find that there was enough evidence to go to the jury on the question of intent to distribute