948 F.2d 782
 292 U.S.App.D.C. 190
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
UNITED STATES of America, Appellee,
v.
Wayne D.A. DAVIS, Appellant.
 No. 88-3116.
 United States Court of Appeals, District of Columbia Circuit.
 Nov. 5, 1991.
 
 Before HARRY T. EDWARDS, STEPHEN F. WILLIAMS and RANDOLPH, Circuit Judges.
 
 JUDGMENT
 PER CURIAM
 
 1
 The appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs filed by the parties and arguments by counsel. After full review of the case, the court is satisfied that appropriate disposition of the appeal does not warrant an opinion. See D.C.Cir.Rule 14(c). For the reasons stated in the accompanying memorandum it is
 
 
 2
 ORDERED and ADJUDGED that the judgment of the District Court be affirmed.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 15.
 
 MEMORANDUM
 
 4
 Police found Wayne Davis in a townhouse full of narcotics, firearms and the paraphernalia of a narcotics enterprise. He and six others also discovered there were jointly tried in the District Court and convicted on three narcotics counts (possession with intent to distribute cocaine, marijuana and more than 50 grams of a substance containing cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)) as well as a predicate firearms count under 18 U.S.C. § 924(c). In this appeal, Davis claims that the evidence before the jury was insufficient to support his convictions, and that the testimony of one officer, John Seiler, was constitutional error.[1] We reject both claims.
 
 I. SUFFICIENCY
 
 5
 The police search party found Davis in a third-floor bedroom. 89 grams (gross) of cocaine, 9 grams (gross) of cocaine base, a scale, "cutting" agents and assorted packaging materials were lying in plain view. Almost 175 grams of marijuana, some of it divided into small bags, as well as ammunition, a holster and a radio scanner were hidden in the room. Moreover, three officers who were outside the townhouse at the beginning of the search testified that they saw someone wearing a distinctively-marked shirt throw several firearms from another room on the third floor; Davis was then found to be wearing that shirt.
 
 
 6
 A reasonable juror could surely decide that Davis indeed discarded those weapons. This fact, together with Davis' presence in plain view of narcotics and various other factors of narcotics distribution, was sufficient to establish beyond a reasonable doubt that Davis constructively possessed with intent to distribute the cocaine, cocaine base and marijuana found in the third floor bedroom, and that he "used or carried" firearms during this crime. See United States v. Gibbs, 904 F.2d 52, 57-58 (D.C.Cir.1990) (defendant's furtive action made his presence near drugs inculpatory); United States v. Dunn, 846 F.2d 761, 763-64 (D.C.Cir.1988) (same); United States v. James, 764 F.2d 885, 889 (D.C.Cir.1985) (same).
 
 
 7
 The cocaine-base count specifically charged Davis with possessing more than 50 grams. Although the contents of Davis' third-floor bedroom would not sustain this charge, the total cocaine base seized at the townhouse had a gross weight of almost 300 grams. Since the reasonable juror need not have doubted that the narcotics enterprise there was an integrated operation, the juror also could have been sure that Davis constructively possessed more than 50 grams of a substance containing cocaine base. Integration was sufficiently established by the presence of narcotics, firearms and paraphernalia throughout the townhouse, combined with expert testimony that the building was a single enterprise's "safe house."
 
 II. EVIDENTIARY ERROR
 
 8
 Officer Seiler testified that two firearms found in the townhouse--one in a second-floor bedroom that contained a large quantity of cocaine base, another in a bathroom on the third-floor--had been stolen from a shop in Tulsa, Oklahoma. This testimony related to Davis, given other evidence that Davis had a Tulsa address and indeed had travelled from Washington to Tulsa only hours after the theft.
 
 
 9
 Seiler admitted on cross-examination that he had no personal knowledge of the events in Tulsa. Instead, as we were informed at oral argument, Seiler used records to trace the origin of the two firearms. Assuming that his testimony was therefore unconstitutional hearsay, see Ohio v. Roberts, 448 U.S. 56 (1980), we find that such error was "harmless beyond a reasonable doubt."[2]
 
 
 10
 Seiler's testimony did not establish a nexus between Davis and the two firearms.[3] The testimony simply tended to show such a nexus. And such nexus, in turn, would only have had minimal probative weight on the issue of constructive possession: it was Davis' furtive presence in the townhouse, not Seiler's testimony, that proved Davis was a participant in the narcotics operation there. Although the Tulsa nexus did have some weight on the issue of integration--the fact that Davis had provided firearms found elsewhere in the townhouse would have tended to show a single, integrated enterprise--there was substantial independent evidence of integration. Thus, we can be sure, beyond a reasonable doubt, that the Seiler testimony did not contribute to the jury verdicts against Davis.
 
 
 11
 We are nonetheless surprised and dismayed that Seiler's testimony was admitted. The Government had planned to introduce first-hand evidence of the Tulsa nexus, by calling the Tulsa shopowner as a witness, but the trial judge was impatient with "this business of bringing in witnesses from all over the country." 5 Trial Tr. at 129-30. Thus, he allowed Seiler to testify instead. Before Seiler was examined, the counsel for one of Davis' codefendants remarked in conference that "I know of no exception to the hearsay requirement that admits [the Tulsa evidence]." The judge replied: "Yeah, that's true. I guess we need a jury here." Id. at 138. When Seiler began to offer his evidence, Davis' counsel objected and asked to approach the bench; the trial judge refused.
 
 
 12
 Appellate review for harmlessness is a poor substitute for the exclusion of erroneous testimony. Seiler's testimony may have violated the Federal Rules of Evidence, the Sixth Amendment of the Constitution, or both. It should not have been admitted without fuller consideration of these objections.
 
 
 
 [1]
 We affirmed the convictions of Davis' codefendants in an unpublished opinion, United States v. Blackwood, Nos. 88-3113 to -3115, 88-3117 to -3119, 89-3210 (D.C.Cir. June 11, 1990)
 
 
 [2]
 Chapman v. California, 386 U.S. 18, 24 (1967)
 
 
 [3]
 Davis himself conceded as much, in arguing for exclusion under Federal Rule of Evidence 402