38 F.Supp.2d 21 (1999)
UNITED STATES OF AMERICA
v.
Reginald W. WASHINGTON, Defendant.
No. 98-0316 (PLF).
United States District Court, District of Columbia.
March 5, 1999.
Mark Carroll, Assistant United States Attorney, Washington, DC, for government.
*22 Robert W. Mance, Washington, DC, for defendant.

MEMORANDUM OPINION
PAUL L. FRIEDMAN, District Judge.
The issue before the Court is whether defendant's possession of 29.1 grams of material containing small amounts of low strength cocaine base is relevant conduct that should be considered in arriving at defendant's sentence under the United States Sentencing Guidelines. In his memoranda in aid of sentencing, defendant objects to the consideration of the 29.1 grams of material on two grounds: (1) that it contained small amounts of cocaine base only because it was contaminated by the police during their collection of evidence, and (2) that the cocaine base was of such low strength that it was unusable and unmarketable and therefore the defendant could not have possessed it with the intent to distribute it. Because the Court finds that the government has not established by a preponderance of the evidence that the defendant intended to distribute the material in question, his possession of it cannot be considered relevant conduct under the Guidelines.

I. BACKGROUND
On August 15, 1998, officers of the Metropolitan Police Department executed a valid search warrant for defendant's residence at 5714 Fifth Street, N.E., Washington, D.C. During the search, the police recovered a loaded gun, 5.6 grams of cocaine hydrochloride of 93 percent strength, 29.1 grams of material including paper towels, newspapers, cardboard and a mixture containing baking soda and one percent strength cocaine base or crack, and assorted drug paraphernalia. As a result, defendant was indicted in four counts: (1) unlawful possession of a firearm and ammunition by a convicted felon, (2) unlawful possession with intent to distribute five grams or more of a mixture containing cocaine base, (3) unlawful possession with intent to distribute a mixture containing cocaine, and (4) unlawful possession of drug paraphernalia. After the Court denied the defendant's motion to suppress tangible evidence, see Order of November 23, 1998, the defendant pleaded guilty to the first and third counts involving the firearm and the powder cocaine. Under the plea agreement, the parties stipulated that the amount of drugs to be considered as relevant conduct for sentencing purposes would be litigated and resolved by the Court after a hearing.
The Court heard testimony regarding the collection, analysis and likely uses of the 29.1 grams of material from Detective Johnny St. Valentine Brown, an acknowledged expert in the illegal drug trade. Detective Brown testified that the 1.0 percent strength cocaine base contained in the 29.1 grams of material most likely was the low grade by-product of the process by which cocaine base is produced, the "remnants left over" after preparing cocaine base for distribution; "it's garbage," he said.[1] On the basis of the drug paraphernalia found in defendant's apartment, Detective Brown opined that defendant was a drug dealer who had been cooking cocaine with water and baking soda to produce cocaine base. He testified, however, that the actual weight of the cocaine base contained in the ziplock was 291 milligrams, that it was not fit for use by anybody and that it therefore would not have been possessed for the purpose of distribution or sale.[2]
*23 Inspector Raymond Stargell and Sergeant Dale Sutherland testified about the discovery and seizure of the 29.1 grams of material at issue. Inspector Stargell testified that he discovered the material in a trash can on the floor under the bar in defendant's basement and called it to the attention of Sergeant Sutherland, the seizing officer. Specifically, Inspector Stargell testified that he observed "paper, gloves, dust, and white powder residue" inside the trash can. Sergeant Sutherland testified that he placed the entire contents of the trash can  and only the contents of the trash can  into an evidence bag. He stated that he put the paper in the evidence bag along with the powder substance because he thought the paper may have been used to dry cocaine base or to clean up after cooking it and therefore might contain quantities of cocaine base residue.
Finally, the defendant testified that he was responsible for the baking soda in the trash can and that he had discarded it directly into the trash can with its container. While the defendant admitted that he had been cooking cocaine to produce cocaine base and that he dealt drugs, he stated that the baking soda in the trash can had never contained cocaine or been near cocaine. He also said he had not put any newspaper into the trash can. Instead, he postulated that the police had taken scraps of newspaper that he had used to dry cocaine base and placed them in the trash can with the baking soda, thereby contaminating the material in the trash can with trace amounts of cocaine base. He emphatically stated that he never intended to sell the material in the trash can to his customers.

II. DISCUSSION
The defendant asks the Court to disregard the 29.1 grams of material containing cocaine base residue for sentencing purposes because the government did not prove by a preponderance of the evidence either (1) that the defendant was responsible for mixing cocaine into the material, or (2) that he intended to distribute any of the material. To rule on the first issue, the Court would have to evaluate the credibility of the witnesses and weigh the testimony of the police officers against the testimony of the defendant. The Court need not make such credibility findings, however, because the Guidelines themselves require the government to prove defendant's intent to distribute the cocaine base before defendant's possession of it can be included as relevant conduct for sentencing purposes. As the government has not provided any evidence from which the Court could infer that the defendant intended to distribute the cocaine base, defendant's possession of it is not relevant conduct under the Sentencing Guidelines.
Relevant conduct is governed by Section 1B1.3 of the U.S. Sentencing Guidelines. U.S.S.G. § 1B1.3 (1998). Under the pertinent portion of Section 1B1.3, the Court must consider as relevant conduct all of a defendant's "acts and omissions" committed as part of the "same course of conduct or common scheme or plan" as the offense of conviction when the "acts and omissions" and the offense of conviction would have been grouped for sentencing purposes under Section 3D1.2(d) of the Guidelines. Id. at § 1B1.3(a)(2). In other words, Section 1B1.3(a)(2) "applies to offenses for which grouping of counts would be required under § 3D1.2(d) had the defendant been convicted of multiple counts." Id. at § 1B1.3, App. Note. 3.
Offenses are required to be grouped for sentencing under Section 3D1.2 of the Guidelines when the offenses "involve substantially the same harm." U.S.S.G. § 3D1.2 (1998). Offenses involve substantially the same harm when, inter alia, *24 "the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm." Id. at § 3D1.2(d). Such offenses required to be grouped explicitly include offenses covered by Section 2D1.1, which establishes sentencing offense levels for the offenses of "unlawful manufacturing, importing, exporting, trafficking (including possession with intent to commit these offenses)" and "attempt or conspiracy." Id. at § 2D1.1. Section 2D1.1 governs offenses forbidden under 21 U.S.C. § 841, the statutory provision proscribing, inter alia, distribution and possession with intent to distribute, and 21 U.S.C. § 960, the statutory provision proscribing, inter alia, importation and smuggling of controlled substances. Id.
By contrast, the list of offenses to be grouped under Section 3D1.2(d) explicitly excludes the offenses covered by Section 2D2.1, entitled "unlawful possession; attempt or conspiracy." U.S.S.G. at § 2D2.1 (1998). Section 2D2.1 establishes sentencing offense levels for offenses under 21 U.S.C. § 844, which is the statutory provision prohibiting simple possession of controlled substances. Id. Simple possession therefore is not the type of offense that would be grouped under Section 3D1.2(d) and thus is not the type of offense that may be considered relevant conduct under Section 1B1.3. Based on the plain language and scheme of the Sentencing Guidelines, the Court concludes that for defendant's possession of the 29.1 grams of material to be considered "relevant conduct" for sentencing purposes, he must have possessed it with the intent to distribute it, and not just simply possessed it.
The burden is on the government to prove the elements of the purported relevant conduct by a preponderance of the evidence. United States v. Patriarca, 912 F.Supp. 596, 608 (D.Mass. 1995) ("The burden of proving the essential elements of each alleged instance of relevant conduct is on the government"); see United States v. Alberto-Genao, 28 F.Supp.2d 658, 663 (D.D.C.1998) ("Whenever the government seeks an upward adjustment or upward departure that might lead to an increase in the sentence under the Sentencing Guidelines, it has the burden of proof by a preponderance of the evidence"). To prove possession with intent to distribute, one element that must be established is the defendant's specific intent to distribute the drugs in question. See United States v. Burch, 156 F.3d 1315, 1324 (D.C.Cir.1998). Intent to distribute may be proven by circumstantial evidence and "may be inferred from a combination of suspicious factors, such as possession of a relatively large amount of cash, weapons, more than a minimal amount of narcotics, and activity in an area of `high narcotic trafficking.'" United States v. Gibbs, 904 F.2d 52, 57 (D.C.Cir.1990).
The government claims that it has established the defendant's intent to distribute by a preponderance of the evidence by introducing evidence such as a scale and plate used to cut cocaine base, a microwave oven used to cook cocaine base, and $30,000 hidden in a stove, all of which were found during the search of defendant's residence. Such evidence may be relevant to the issue of intent in some cases, see United States v. Gibbs, 904 F.2d at 57, and undoubtably would have been helpful to the government if it had gone to trial on the 5.6 grams of cocaine hydrochloride. But whether the defendant is a drug dealer who was packaging narcotics for distribution is not the issue; the defendant is a drug dealer, as he himself readily admitted during his testimony. The question is whether he possessed the 29.1 grams of material containing one percent strength cocaine base with the intent to distribute it, and on that issue the government has the burden of proof by a preponderance of the evidence.
In this case, the government has failed to demonstrate that the defendant intended to distribute the 29.1 grams of material containing one percent strength cocaine *25 base by a preponderance of the evidence. Detective Brown testified without contradiction that the 29.1 grams of material in question contained cocaine of such low strength that it could not have been intended for use by anyone and/or for sale or distribution, and the government's counsel conceded this fact at the first evidentiary hearing. In the absence of any evidence of an intent to distribute, defendant's possession of the 29.1 grams of material is not an offense that could be grouped under the Guidelines with defendant's offense of conviction. It therefore may not be considered as relevant conduct.[3] Accordingly, defendant's base offense level under the U.S. Sentencing Guidelines is 12 for possession with intent to distribute 5.6 grams of powder cocaine. U.S.S.G. § 2D1.1(c)(14). Two levels are added for possession of the firearm under Section 2D1.1(b)(1), and defendant then receives a two level reduction for acceptance of responsibility under Section 3E1.1, giving him a total offense level of 12. At an offense level of 12 with a Criminal History Category of II, the defendant's Guideline sentencing range is 12 to 18 months.
SO ORDERED.
NOTES
[1] In his report, the chemist described the material he analyzed as a "ziplock with paper scraps found to contain cocaine base." DEA Form 7, Defendant's Exhibit 1. The material in the ziplock weighed 29.1 grams and the "concentration" or strength of the "active drug ingredient" was indicated as 1.0 percent. Id.
[2] The prosecutor stipulated at the first of two evidentiary hearings that no drug dealer would distribute this material but seemed to recede from this position at the second hearing where, incredibly, he suggested that he would have had no qualms about going to trial on the second count of the indictment and asking a jury to convict the defendant of possession with intent to distribute cocaine base despite the chemist's report as to its quality and Detective Brown's uncontradicted testimony.
[3] This conclusion is consistent with the decision of the Eleventh Circuit in United States v. Newsome, 998 F.2d 1571, 1578-79 (11th Cir. 1993), where the court held that the possession of "unusable mixtures" did not constitute relevant conduct for sentencing purposes. The Eleventh Circuit, however, did not base its ruling on the Guidelines, focusing instead on the unreasonableness of sentencing defendants "based on the weights of materials that would never find their way to ... consumers." Id. at 1578. But see United States v. Walker, 960 F.2d 409 (5th Cir.) (the weight of liquid waste containing a "detectable amount of methamphetamine" should be included in sentencing calculations), cert. denied, 506 U.S. 967, 113 S.Ct. 443, 121 L.Ed.2d 362 (1992).