**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
     *Plaintiff-Appellee,*

    v.

MARCOS ALONZO HERNANDEZ,
     *Defendant-Appellant.*

No. 05-50920

D.C. No.
CR-04-02983-IEG

OPINION

Appeal from the United States District Court
for the Southern District of California
Irma E. Gonzalez, District Judge, Presiding

Argued and Submitted
October 17, 2006—Pasadena, California

Filed February 14, 2007

Before: Harry Pregerson, Ronald M. Gould, and
Richard R. Clifton, Circuit Judges.

Opinion by Judge Gould

## COUNSEL

James Fife, Federal Defenders of San Diego, Inc., San Diego, California, for appellant Marcos Alonzo Hernandez.

Bruce C. Smith, Assistant United States Attorney, San Diego, California, for appellee United States of America.

## OPINION

GOULD, Circuit Judge:

Petitioner Marcos Alonzo Hernandez ("Hernandez") appeals his convictions for possession of methamphetamine

with intent to distribute and for importation of more than fifty grams of methamphetamine. Hernandez argues that his convictions must be reversed because the district court admitted testimony commenting on his silence during custodial interrogation, in violation of the Fifth Amendment, and because the district court erroneously denied his request for a jury instruction on the lesser included offense of simple possession. Hernandez also contends that his sentence should be vacated because either the mandatory language of 18 U.S.C. § 3553(f) renders the safety valve provision invalid after *United States v. Booker*, 543 U.S. 220 (2005), or because § 3553(f)'s requirements are advisory after *Booker*, and the district court should have applied it in sentencing Hernandez. We have jurisdiction under 28 U.S.C. § 1291 and affirm in part and reverse in part the judgment of the district court.

# I

On September 20, 2004, at about 11:30 p.m., Hernandez and his companion, Paul Ortega, entered the United States from Mexico, at the port of entry, Otay Mesa, California. Ortega was the driver, and Hernandez was the front seat passenger. In conducting the primary inspection of Hernandez and Ortega, Customs and Border Protection ("CBP") officer James observed anxiety in both men, so James referred them to a more intensive secondary inspection.

At the secondary inspection, both Hernandez and Ortega were ordered out of the vehicle and were patted down. There were six CBP officers present, and CBP officer Carlas testified that at this secondary inspection, if "Hernandez had turned and tried to run," CBP officers would have stopped him.

During the pat-down of Hernandez, Carlas felt and pulled out of Hernandez's left front pants pocket an opaque cellophane bag about the size of an open hand. Carlas held the package up for Hernandez to see and asked, "what is this?"

Hernandez gave no response. CBP officer Bisa then asked Hernandez, "is it meth?" Hernandez replied, "yes." CBP officers then handcuffed Hernandez and Ortega and escorted them to the secondary security office, where CBP officer Hicks formally arrested Hernandez for possession of narcotics after the package tested positive for methamphetamine. Alan Randa, a forensic chemist employed by the Drug Enforcement Administration, later tested and determined that Hernandez's package was 70% pure methamphetamine, and had a net weight of 159.1 grams, the equivalent of 111.3 grams of pure or "actual" methamphetamine.

Hernandez was charged with one count of importation of approximately 115 grams of actual methamphetamine, in violation of 21 U.S.C. §§ 952 and 960, and one count of possession of 115 grams of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). During trial, in the government's case-in-chief, CBP officer Carlas testified that after he pulled the package from Hernandez's front left pants pocket and asked him "what is this?" Hernandez did not respond; and that CBP officer Bisa then asked Hernandez if it was meth. Defense counsel objected to this testimony. Outside the presence of the jury, the district court found that at the time of the secondary inspection Hernandez was "detained and he couldn't leave," and Carlas's question, "what is this?," and Hernandez's subsequent silence were admissible, but that the government could not use Bisa's question, "is it meth?", or Hernandez's response, "yes" in its case-in-chief.

Immigration and Customs Enforcement Agent Amatore testified as an expert witness that Hernandez possessed the methamphetamine for resale and distribution rather than personal consumption. Amatore concluded that the methamphetamine seized from Hernandez had a reasonable wholesale value in southern California of between $2,160 and $4,140.

At the jury instruction conference, Hernandez requested a jury instruction on the lesser included offense of simple pos-

session to the charged offense of possession with intent to distribute. The district court denied this request and the jury convicted Hernandez on both counts in the indictment.

The mandatory statutory minimum sentence for both of Hernandez's convictions is ten years. Hernandez argued that the safety valve provision, 18 U.S.C. § 3553(f), and U.S.S.G. § 5C1.2 rendered the sentencing guidelines mandatory in violation of *Booker*. During sentencing the district court adjusted Hernandez's criminal history category downward from a Category III to Category I, noting that the appropriate sentencing range under the federal guidelines was then 63 to 78 months. However, the district court determined that since it was the criminal history points and not the criminal history category that controlled eligibility for the safety valve provisions of 18 U.S.C. § 3553(f), Hernandez was not eligible for the safety valve provision because he had more than one criminal history point. The district court sentenced Hernandez to the statutory minimum sentence of 120 months. Hernandez appealed.

## II

We first address Hernandez's claim that the district court erroneously admitted testimony at trial commenting on his silence during custodial interrogation, in violation of the Fifth Amendment. We review whether there has been a violation of a defendant's Fifth Amendment rights de novo. *See United States v. Beckman*, 298 F.3d 788, 795 (9th Cir. 2002) (reviewing comments on defendant's silence).

[1] The right to remain silent is founded in the Fifth Amendment to the United States Constitution, which provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V; *see also United States v. Velarde-Gomez*, 269 F.3d 1023, 1029 (9th Cir. 2001) (en banc) (stating that *Miranda v. Arizona*, 384 U.S. 436 (1966), warnings are "a prophylactic means of safeguarding Fifth Amendment rights" and that an "individual

has a right to remain silent in the face of [custodial] government questioning, regardless of whether the *Miranda* warnings are given" (internal quotation marks omitted)). This right to remain silent carries an implicit "assurance that silence will carry no penalty." *Doyle v. Ohio*, 426 U.S. 610, 618 (1976). The government may use a defendant's post-arrest, pre-*Miranda* silence for impeachment, but it may not do so "in its case-in-chief." *Velarde-Gomez*, 269 F.3d at 1029 n.1, 1033.

The district court allowed the government, in its case-in-chief, to present testimony relating to Hernandez's post-arrest pre-*Miranda* silence. We conclude that the district court violated Hernandez's Fifth Amendment rights by admitting testimony commenting on his silence.

**[2]** Generally, a suspect's *Miranda* rights are triggered during custodial interrogation. *Miranda*, 384 U.S. at 444. Interrogation is "express questioning" by the police, or "any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980) (footnote omitted). Officer Carlas testified that when he removed the opaque package from Hernandez's pants pocket he believed it contained drugs. When officer Carlas then asked, "what is this?", not only was this direct questioning, but based on officer Carlas's belief that he was holding drugs in his hand, he knew or should have known his question could reasonably lead to an incriminating response from Hernandez.

**[3]** An individual is in custody if considering the circumstances surrounding an interrogation "a reasonable person . . . felt he or she was not at liberty to terminate the interrogation and leave." *Thompson v. Keohane*, 516 U.S. 99, 112 (1995). Relevant circumstances to the custody analysis "include the language used by the officers, the physical characteristics of the place where the question occurs, the degree of pressure applied to detain the individual, the duration of the detention,

and the extent to which the person was confronted with evidence of guilt." *United States v. Butler*, 249 F.3d 1094, 1099 (9th Cir. 2001). In this case, Hernandez was at a secondary customs inspection station between the United States and Mexico. He was surrounded by six CBP officers, ordered out of the car, ordered to place his hands on top of the vehicle and subjected to a pat-down. If he had tried to leave, he would have been stopped. The district court found that there was "no doubt [Hernandez] was detained and he couldn't leave." Considering the circumstances of the interrogation, we conclude that a reasonable person in Hernandez's position would not have felt free to terminate the inspection by the CBP officers and leave. Because Hernandez was under custodial interrogation when he did not respond to officer Carlas's question, his *Miranda* rights were triggered, and the district court erred by admitting testimony relating to Hernandez's silence.

The government has the burden of proving this error was harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 24 (1967) (placing the burden on "the beneficiary of [the] constitutional error"). "In the context of comments on silence, we consider three factors: '[1] the extent of comments made by the witness, [2] whether an inference of guilt from silence was stressed to the jury, and [3] the extent of other evidence suggesting defendant's guilt.' " *Velarde-Gomez*, 269 F.3d at 1034-35 (alterations in original) (quoting *United States v. Newman*, 943 F.2d 1155, 1158 (9th Cir. 1991) (applying harmless error review)).

As to the first factor, the extent of the witness's comments were brief—officer Carlas mentioned Hernandez's silence only twice. The second factor, whether Hernandez's silence was stressed to the jury, also favors finding harmlessness, as the government did not mention Hernandez's silence to the jury again.[1]

---

[1] The government claims that it did not bring Hernandez's silence up again, and Hernandez does not contest this assertion.

The third factor, too, the extent of the evidence suggesting Hernandez's guilt, supports a finding of harmlessness. Here, there was overwhelming evidence that Hernandez was guilty of at least possession of methamphetamine and importation of more than fifty grams of methamphetamine. The package, which tested positive for more than 159 grams of methamphetamine, was found on Hernandez's person as he was trying to enter the United States from Mexico. This evidence was uncontroverted at trial.

**[4]** Hernandez argues that because he had no knowledge that the drugs were in his left front pants pocket, the error was prejudicial because it commented on his knowledge that drugs were present. We disagree. Hernandez's silence when asked about the package was not in itself inculpatory. His silence was not inconsistent with his defense theory that the driver planted the drugs on him. Moreover, given the overwhelming evidence against Hernandez, we are confident that a jury in the end would have ignored Hernandez's improbable story that he did not know drugs were in his front pants pocket. We hold that the inclusion of testimony regarding Hernandez's silence was harmless beyond a reasonable doubt.

### III

### A

Hernandez next argues that his conviction for possession of methamphetamine with intent to distribute should be vacated because the district court refused to instruct the jury on the lesser included offense of simple possession.

**[5]** We review a district court's refusal to instruct on a lesser included offense using a two part test. First, "the defendant must prove that the offense on which instruction is sought is a lesser-included offense of that charged." *United States v. Fejes*, 232 F.3d 696, 703 (9th Cir. 2000) (citation and internal quotation marks omitted). This is reviewed de

novo. *See United States v. Arnt*, ___ F.3d ___, 2007 WL 177829, at *3 (9th Cir. January 25, 2007). The government concedes that 21 U.S.C. § 844(a), simple possession of methamphetamine, is a lesser included offense of 21 U.S.C. § 841(a), possession of methamphetamine with intent to distribute.

**[6]** Second, to warrant a lesser included offense instruction "the evidence at trial must be such that a jury could rationally find the defendant guilty of the lesser offense, yet acquit him of the greater." *Schmuck v. United States*, 489 U.S. 705, 716 n.8 (1989) (citing *Keeble v. United States*, 412 U.S. 205, 208 (1973)). We review this step of the inquiry for abuse of discretion. *See Fejes*, 232 F.3d at 703.

We have previously stated that when "a defendant is charged with possession with intent to distribute, the district court may refuse to give an instruction on simple possession where there is a large quantity of a drug and other evidence tending to establish distribution." *United States v. Vaandering*, 50 F.3d 696, 703 (9th Cir. 1995). We do not require a lesser included instruction in such circumstances, because once a jury determines that a defendant possessed the drugs, "it could not rationally conclude that there was no intent to distribute." *United States v. Powell*, 932 F.2d 1337, 1342 (9th Cir. 1991) (refusing to require a lesser included offense instruction where the defendant had more than eleven pounds of cocaine hidden in a bag in his basement; various smaller amounts of cocaine located throughout his house; rinsed-kilogram bags, which had recently held cocaine; a portable electronic scale and triple beam balance; a currency counter; and $162,000 in cash) (citing *United States v. Espinosa*, 827 F.2d 604, 615 (9th Cir. 1987) (holding that a rational jury could only conclude there was an intent to distribute where the defendant possessed sixty-nine pounds of cocaine in an unfurnished apartment to which the defendant had keys)).

**[7]** This rule is not applicable here because the government presented no evidence, other than the methamphetamine itself

and expert testimony, to establish an intent to distribute. Drugs by themselves, in quantities that could rationally be thought by the jury to be for personal use, without other evidence of intent to distribute, are not enough to exclude a jury instruction on a lesser included offense. *See Vaandering*, 50 F.3d at 703-04; *Powell*, 932 F.2d at 1342. This case is governed by the standard announced in *Schmuck*: If a rational jury could find Hernandez guilty of the lesser offense, yet acquit him of the greater, then the district court abused its discretion by failing to give a lesser included jury instruction. *See Schmuck,* 489 U.S. at 716 n.8.

Certainly, there are cases in which no rational jury could find that the defendant possessed the drugs for any reason other than distribution, even though the only evidence presented at trial is the quantity, purity, and monetary value of the drugs.[2] At the opposite end are cases where the value and quantity of drugs possessed by the defendant are such that no reasonable jury could find an intent to distribute.[3] Between these extremes, however, lies "the jury's province to deter-

---

[2]*See United States v. Silla*, 555 F.2d 703, 706-07 (9th Cir. 1977) (holding that no rational jury could conclude there was no intent to distribute where the defendants possessed 3,000 pounds of marijuana); *see also United States v. Short*, 805 F.2d 335, 336-37 (8th Cir. 1986) (holding that possession of the equivalent of 279 pounds of marijuana valued at $279,000 dollars justified the district court's refusal to provide a lesser included instruction); *United States v. Echeverri-Jaramillo*, 777 F.2d 933, 935-36 (4th Cir. 1985) (holding that possession of more than thirty-five pounds of cocaine valued at between $5 and $7 million ruled out a simple possession jury instruction); *United States v. Henley*, 502 F.2d 585, 586 (5th Cir. 1974) (per curiam) (holding that possession of more than seven tons of marijuana justified the district court's refusal to provide a simple possession instruction).

[3]*See Turner v. United States*, 396 U.S. 398, 422-23 (1970) (concluding that possession of 14.68 grams of cocaine mixed with sugar was insufficient to sustain a conviction for distribution, despite possession of heroin that "proved he was dealing in drugs"); *United States v. Latham*, 874 F.2d 852, 862-63 (1st Cir. 1989) (holding that "an inference of intent to distribute [was] not warranted from the possession of one ounce of cocaine").

mine whether the evidence demonstrates simple possession or possession with intent to distribute." *United States v. Lucien*, 61 F.3d 366, 376 (5th Cir. 1995).

**[8]** In refusing to instruct the jury on simple possession the district court reasoned that:

> I find there's absolutely no evidence that would support the defense in this case that it was for simple possession.
>
> If the defendant had taken the stand or there was some other evidence that this is a quantity that can be used for personal consumption, then I would give it.
>
> But I find that it is sufficient for a jury to find beyond a reasonable doubt that the defendant possessed with intent to distribute. There's absolutely no evidence, no evidence other than his simple possession, that it was for his personal consumption.
>
> So I find that the evidence that the government has offered, that is the quantity, and most importantly, the testimony of the expert about the value, about that this is for distribution, that, in fact, is sufficient not to give a lesser included instruction.

We disagree with the district court's reasoning. We agree that the government's evidence was sufficient to convict Hernandez of possession of methamphetamine with intent to distribute. But that does not foreclose the possibility that a rational jury could also have found Hernandez guilty of simple possession.

**[9]** True, Hernandez did not present affirmative evidence that he possessed the methamphetamine for personal use. But that is not Hernandez's burden. It is the government's burden

to prove beyond a reasonable doubt that Hernandez had the requisite intent to distribute. The government did present expert witness testimony on the drug's purity, quantity, and dollar value,[4] which were high for personal use, but the government did not produce testimony on whether Hernandez personally had an intent to distribute the methamphetamine.

It would not be irrational if a jury had concluded that Hernandez was returning from a buying trip to Mexico, and his intent was to stockpile his reserves of methamphetamine for personal use, rather than distribution. Additionally, there was no corroborating physical evidence. When Hernandez was arrested the drugs were not individually cut or packaged for sale; the government produced no evidence that Hernandez had precursor chemicals, glassware, cutting agents, scales, firearms or weapons, or other typical items associated with drug trafficking. Even if it is more probable that a drug distribution was intended by Hernandez, we cannot say that a rational jury could not have concluded that Hernandez possessed the methamphetamine for personal use. The government did not show that the jury's only option on the evidence was to find intent to distribute beyond a reasonable doubt.

**[10]** We note, moreover, that a district court may not weigh the evidence in determining whether to give a lesser included offense instruction. The standard announced by the Supreme Court is that regardless of the weight of the evidence, a defendant is entitled to a lesser included offense instruction if the evidence would allow a rational jury to convict him of the lesser offense and acquit him of the greater. *See Keeble*, 412

---

[4]The government's expert testified that the street value of the methamphetamine was between $2,160 and $4,140. And according to defense counsel, based on the government expert Amatore's stated typical dosage size, the quantity of the drugs was the equivalent of between forty-eight and ninety-six doses. Although we have doubts as to the reliability of this calculation, since it does not appear to take into account the purity of the methamphetamine that Hernandez had, the government did not challenge this estimate and so we assume that it is reasonable.

U.S. at 208. That Hernandez did not affirmatively present evidence on his intention to use the drugs for personal use is not controlling. What matters is what a jury could have concluded from the evidence presented. Given that the only affirmative evidence the government presented was the methamphetamine itself and the expert testimony that the amount and purity indicated an aim for distribution, and there was no other physical evidence of drug trafficking, we conclude that a rational jury could have found that Hernandez possessed the methamphetamine for personal use. Because personal use of the drugs was a rational possibility, it was within the jury's province to determine that Hernandez was guilty of only simple possession.

Comparison to other cases reinforces our conclusion. Hernandez's case is dissimilar to *Vaandering*, where we held that the district court properly refused to give a jury instruction on the lesser included offense of simple possession where the defendant possessed 167 grams of methamphetamine. *See* 50 F.3d at 703-04. Our decision there was supported by the evidence that a co-defendant's residence was a methamphetamine lab complete with precursor chemicals, glassware, and scales, and there was testimony that this residence "was a source of methamphetamine for the purpose of distribution." *Id.* at 703 Hernandez possessed more than 159 grams of a mixture containing methamphetamine, an almost identical amount to the defendant in *Vaandering*. Unlike the defendant in *Vaandering*, however, here there was no other evidence of drug distribution.

This case is similar to *United States v. Trujillo*, 390 F.3d 1267, 1273 (10th Cir. 2004), where the Tenth Circuit concluded that the district court properly gave a lesser included offense instruction. In *Trujillo*, the defendant was stopped for speeding. *Id.* at 1269-70. During a K-9 sniff of his car, the dog alerted to a box in the trunk containing 112.7 grams of 79% pure cocaine, which the government's expert testified was the equivalent of 448 doses and had a street value of

$2,000 to $2,400. *Id.* at 1270. The court noted that "despite the government's insistence that the quantity alone was sufficient to permit only one rational inference by the jury," the district court properly gave the lesser included offense instruction. *Id.* at 1273.

Similarly, in *United States v. Gibbs*, 904 F.2d 52, 54-55, 59 (D.C. Cir. 1990), the District of Columbia Circuit held that it was reversible error for the trial judge not to give the lesser included offense instruction where five people were in possession of 15.5 grams of cocaine, $576 in cash, and several firearms with ammunition. The court stated that, "this [was] not a case in which the defendants were in possession of a quantity of drugs so large as to defy a suggestion of personal use." *Id.* at 58. Because the government did not present any evidence, or expert testimony, that five adult men could not consume 15.5 grams of cocaine, the court declined to hold that 15.5 grams of cocaine was, per se, inconsistent with personal use. *Id.*

**[11]** Like in *Gibbs*, here the government presented evidence on the quantity, but unlike in *Gibbs*, Hernandez was not found with any cash or firearms. Here, the government did not present evidence that Hernandez could not have consumed the methamphetamine personally. By declining to instruct the jury on simple possession based on Hernandez's possession, without more evidence of distribution, of 159 grams of a mixture containing methamphetamine, the district court "effectively eliminate[d] the range of cases in which the jury determines what the evidence shows." *Lucien*, 61 F.3d at 377.

**[12]** In *Vaandering* we specifically left open the issue "whether 167 grams of methamphetamine, without more, is a sufficiently large quantity of drugs to preclude an instruction for simple possession." 50 F.3d at 704. We cannot say, here, that the 159 grams of methamphetamine Hernandez possessed was so great a quantity, that with this quantity standing alone, without any other evidence, the district court properly refused

to provide a simple possession instruction. This is not the case of several tons of marijuana, *see Henley*, 502 F.2d at 586, or several million dollars worth of cocaine. *See Espinosa*, 827 F.2d at 615. Rather, we conclude that this is a case where a rational jury could have found Hernandez guilty of either simple possession or possession with intent to distribute. That decision was properly a decision for the jury, not for the district court, to make. Accordingly, we hold that the district court abused its discretion by not providing a lesser included instruction to the jury on simple possession.

## B

It is not clear whether failure to provide a lesser included jury instruction, in cases other than in the death penalty context, may be considered a constitutional error.[5] If it is constitutional error, then it must be harmless beyond a reasonable doubt. *See United States v. Neder*, 527 U.S. 1, 7 (1999). If it is not constitutional error, then we would apply a harmless error standard more deferential to the government, and less protective of the defendant, as set forth in *Kotteakos v. United States*, 328 U.S. 750 (1946). Under *Kotteakos*, the error is reversible "if one cannot say, with fair assurance, . . . that the judgment was not substantially swayed by the error." *Id.* at 765. That is, if the "error itself had substantial influence" on the judgment, then it is not harmless. *Id.* However, we need not decide today whether the failure to give a lesser included jury instruction is constitutional error. For even under the more lenient standard of *Kotteakos*, the district court's refusal to instruct the jury on the lesser included offense of simple possession was not harmless.

---

[5]*See Beck v. Alabama*, 447 U.S. 625, 637-38 (1980), (holding that due process was violated by the state's capital punishment statute that prevented the trial court from giving the jury the option of convicting on a lesser-included, non-capital offense, where there was sufficient evidence for such a jury instruction). *But see Gilmore v. Taylor*, 508 U.S. 333, 361-62 (1993) (Blackmun, J., dissenting) (suggesting *Beck* is limited to capital cases); *Schad v. Arizona*, 501 U.S. 624, 645-48 (1991) (same).

**[13]** Hernandez's jury was instructed only on possession with intent to distribute. The government presented uncontroverted evidence at trial that Hernandez possessed methamphetamine. Faced with a defendant who was unequivocally guilty of some possession crime, the jury had a choice between convicting Hernandez of possession with intent to distribute or acquitting him. It is not possible to say with confidence that the jury chose the former option because the government met its burden. The jury may have decided that given the overwhelming evidence against Hernandez, it did not want to acquit him of that charge, and so chose the only other option available to it—conviction of intent to distribute methamphetamine. Eliminating the option of finding Hernandez guilty of simple possession from the jury's province, under the circumstances of this case, substantially influenced the verdict and was not harmless error.

**[14]** The error of not giving the lesser included jury instruction on simple possession in this case was fatal to the conviction of Hernandez for possession of methamphetamine with intent to distribute it, and that conviction cannot stand. On the other hand, the failure to give the lesser included offense instruction did not affect in any way the conviction of Hernandez for importation of more than fifty grams of methamphetamine, and that conviction stands.

## IV

Finally, we address Hernandez's arguments attacking his sentence and the sentencing safety valve provision, 18 U.S.C. § 3553(f).[6] We review the district court's interpretation of the

---

[6]Both of Hernandez's convictions carry a minimum sentence of ten years. 18 U.S.C. § 3553(f), however, provides a statutory basis for relief from the mandatory minimum sentences. If all of § 3553(f)'s requirements are met, then "the court shall impose a sentence pursuant to guidelines promulgated by the United States Sentencing Commission . . . without regard to any statutory minimum sentence . . . ." 18 U.S.C. § 3553(f).

Sentencing Guidelines de novo and the application of the Sentencing Guidelines to the facts[7] for abuse of discretion. *See United States v. Kimbrew*, 406 F.3d 1149, 1151 (9th Cir. 2005).

Hernandez presents two primary arguments why the district court's sentence should be vacated. First, Hernandez contends that because the sentencing guidelines are advisory after *Booker*, a district court has discretion as to how and when it determines § 3553(f) eligibility. Second, Hernandez argues that because § 3553(f) contains mandatory language, it is invalid after *Booker*.[8] Hernandez's *Booker*-based challenges are foreclosed by recent Ninth Circuit opinions in *United States v. Hernandez-Castro*, ___ F.3d ___, 2007 WL 79532, at *1 (9th Cir. Jan. 12, 2007), where we held that § 3553(f)(1) was not "rendered advisory by *Booker*," and *United States v. Cardenas-Juarez*, 469 F.3d 1331, 1334-35 (9th Cir. 2006), where we held that despite its mandatory language, 18 U.S.C. § 3553(f) survives *Booker*, and if triggered requires district courts to impose sentences according to the advisory Sentencing Guidelines. We follow our holdings in *Hernandez-Castro* and *Cardenas-Juarez*, and Hernandez's claims fail.

---

To be eligible for § 3553(f) relief: (1) a defendant must not have more than one criminal history point; (2) he must not have used violence or possessed a dangerous weapon in connection with his offense; (3) the offense must not have resulted in death or serious bodily injury to a person; (4) he must not have been a leader in the offense or engaged in a continuing criminal enterprise; and (5) he must have truthfully provided to the Government all information and evidence that he has concerning the offense. 18 U.S.C. § 3553(f).

[7]The parties do not dispute the district court's factual findings at sentencing.

[8]In § 3553(f), the word "shall" appears: "the court *shall* impose a sentence pursuant to guidelines promulgated by the United States Sentencing Commission." *Id.* (emphasis added).

## V

In conclusion, we affirm Hernandez's conviction for importation of more than fifty grams of methamphetamine, and we affirm his sentence of 120 months, which was mandatory for that conviction. Conversely, we reverse Hernandez's conviction for possession of methamphetamine with intent to distribute, and we remand for further proceedings consistent with this opinion.

**AFFIRMED IN PART, VACATED IN PART, and REMANDED.**