**850-15**

IN THE COURT OF CRIMINAL APPEALS

ORIGINAL

NO.: PD-0850-15

*Oral Argument Demanded*

RECEIVED IN
COURT OF CRIMINAL APPEALS

OCT 02 2015

Abel Acosta, Clerk

Johnny Calvin Scott,
Petitioner

v.

THE STATE OF TEXAS

---

From the 396th District Court of Tarrant County, Texas
Trial Court No.: 1359184R
Trial Court Judge: Gallangher
Appealed in the 2nd Court of Appeals, Forth Worth
Appeal No.: 02-14-00183-CR

---

PETITION FOR DISCRETIONARY REVIEW

FILED IN
COURT OF CRIMINAL APPEALS

OCT 02 2015

Abel Acosta, Clerk

Note:
*Petitioner has no access
to trial transcripts,
reporter's, or clerk's
records.

Submitted By:
Johnny Calvin Scott,
Pro Per
Bill Clements Unit
Amarillo, Texas 79107-9608

# TABLE OF CONTENTS

INDEX OF AUTHORITIES...                                                      i
STATEMENT REGARDING ORAL ARGUMENT...                                         1
STATEMENT OF THE CASE...                                                     1
STATEMENT OF PROCEDURAL HISTORY...                                           1
GROUNDS FOR REVIEW...                                                        1

ARGUMENT...                                                                  2

    Ground #1: Invalid/Defective Indictment...                           2

    Ground #2: Trial Court Refused to Suppress the Detective's Unsworn
        Statement's Made During Interrogation...                      3

    Ground #3: Trial Court Erred in Refusing to Give Jury Charge/
        Instruction on Self-Defense...                               4

    Ground #4: Trial Court Erred in Refusing to Give Jury Charge/
        Instruction of Lesser Included Offense of Murder or Manslau... 6

    Ground #5: Trial Court Erred in Refusing to Give Jury Charge/
        Instruction on not to Consider Comments of Detectives in ..
        Recorded Interrogations of Appellant as Evidence...          3

    Ground #6: Trial Counsel was Ineffective by not Asking the Court/
        Judge for a Jury Charge/Instruction of a Lesser Included
        Offense of Murder or Manslaughter...                          8

    Ground #7: Trial Counsel was Ineffective by not Timely Asking for a
        Limiting Instruction When the Court Admitted the Published
        Video                                                         8

PRAYER...                                                                    9
CERTIFICATE OF SERVICE...                                                    9

## INDEX OF AUTHORITIES

Constitution, Statutes, and Rules

Texas Code of Criminal Procedure Article 37.09(1)...                         6

Texas Penal Code §19.03(c)...                                                6

Cases

Almanza v. State, 686 S.W.2d at 171...                                       5
Brect v. Abrahamson, 507 U.S. at 637, 113 S.Ct. 1710...                      6
Bufkin v. State, 207 S.W.3d 779(Tex.Crim.App. 2006)...                       4
Cornet v. State, 417 S.W.3d 446...                                           5
Delgado v. State, 235 S.W.3d 244(Tex.Crim.App. 2007)                         8
Flores v. State, 215 S.W.3d 520(Tex.Crim.App. - Beaumont 2007)...        4, 7
Hammock v. State, 46 S.W.3d 889(Tex.Crim.App. 2001)...                       8
Hicks v. State, 860 S.W.2d 419(Tex.Crim.App. 1993)...                        2
Kimmelman v. Morrison, 447 U.S. 365...                                       8
Krajcovic v. State, 393 S.W.3d 282(Tex.Crim.App. 2013)...                    4
Lyles v. State, 850 S.W.2d 497(Tex.Crim.App. 1993)...                        4
Moore v. State, 969 S.W.2d 4...                                              6
Robertson v. Cain, 324 F.3d 297 (5th Cir. 2003)...                          5
Sanchez v. State, 221 S.W.3d 769(Tex.App. - Corpus Christi 2007)...       2, 3
Sanchez v. State, 376 S.W.3d 772...                                          5
U.S. v. Hernandez, 476 F.3d 791...                                        7, 8

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner feels that his argument should be presented orally to better correlate the issues presented in this Petition for Discretionary Review. Certain controversial issues and facts can easily be confusing and misleading due to not only the States recollection of evidence and facts, but the way they are argued by both sides of this action and Petitioner feels that an oral argument to this court will give a more in-depth understanding of the issues in this Petition, especially issues #2 and 5.

## STATEMENT OF THE CASE

Jonnny Calvin Scott, Jr., Petitioner was indicted and tried for the offense of Capitol Murder in Tarrant County, Texas. Petitioner's trial began on April 28, 2014, he was convicted May 2, 2014 in the 396th District Court of Tarrant County by a guilty trial verdict, and was sentenced to Life without parole in T.D.C.J. on the same date. The Petitioner filed a Notice of Appeal on the same date. The trial court judge was justice Gallangher. Petitioner filed a Motion for new trial on May 30, 2014, which was denied by operation of law (J.N.O.V.) on August 13, 2014. Petitioner's appellate counsel William S. Harris then filed the Appellant's Brief on November, 2014 and on June 4, 2015 the 2nd Court of Appeals overruled and affirmed the trial court's judgement. On June 16, 2015 The Petitioner filed a Motion for Rehearing and Reconsideration. This motion was denied On July 2, 2015. This Petition for Discretionary Review (without counsel or access to trial transcripts/reporter's/clerk's records) follows.

## STATEMENT OF PROCEDURAL HISTORY

On June 4, 2015 the 2nd Court of Appeals, Forth Worth handed down its Memoranum Opinion and Overruled and Affirmed the trial court's judgement. THe Petitioner filed a Motion for Rehearing on June 16, 2015. The Petitioner's Motion was denied on July 2, 2015.

## GROUNDS FOR REVIEW

Ground #1: Invalid/Defective Indictment

Ground #2: Trial Court Refused to Suppress the Detective's Unsworn Statements During Interrogation.

Ground #3: Trial Court Erred in Refusing to Give Jury Charge/Instruction on Self-Defense.

Ground #4: Trial Court Erred in Refusing to Give Jury Charge/Instruction of Lesser Included Offense of Murder or Manslaughter.

1.

Ground #5: Trial Court Erred in Refusing to Give Jury Charge/Instruction on Not to Consider Comments of Detectives in Recorded Interrogations of Appellant as Evidence.

Ground #6: Trial Counsel was Ineffective by Not Asking the Court/Judge for a Jury Instruction of a Lesser Included Offense of Murder or Manslaughter.

Ground #7: Trial Counsel was ineffective by not Timely Asking for a Limiting Instruction When the Court Admitted the Published Video.

## ARGUMENT

### Ground #1: Invalid/Defective Indictment

Petitioner asserts that his indictment was defective by not clearly stating the cause of death. The indictment was broad in claiming the cause of death (by asphyxiation or cut with an unknown blade) of the victim or stating that the cause of death was 'unknown'.

It is understood through the ruling in Sanchez v. State, 221 S.W.3d 769 (Tex.App. - Corpus Christi 2007) and its predecessor Hicks v State, 860 S.W.2d 419 (Tex.Crim.App. 1993), that "... in the case where the cause of death cannot be conclusively established, it is not uncommon for the indictment to allege a primary cause of death and, in the alternative, to allege that the death was caused by a manner and means unknown to the grand jury." Id. at 776. However, "When the indictment alleges the cause of death in this manner, the State bears the burden of proving the "unknown" allegation"(emphasis added).

The two prong test in Hicks states that "The State carries the burden in either of two ways: (1) if the trial testimony does not establish the cause of death, a prima facie showing is made that the cause of death, was unknown to the grand jury used due diligence in attempting to ascertain the cause of death." Hicks v. State, 860 S.W.2d 419, 424 (emphasis added).

However, neither of these prongs were satisfied either through the trial testimony of the expert witness, or through a showing of due diligence by the grand jury of finding a cause of death of the victim; let alone that the Petitioner was the one who killed or caused the death of the victim.

In the first prong the Expert witness Dr. Roe stated that the "Strangulation occured while Murrell (the victim) was alive..." and that it "...preceeded the neck slitting." Ruling out the strangulation as the cause of death, but at the same time stating that "...the neck slitting would have caused death within thirty to forty seconds, which was too brief to create the petechiae observed on Murrell's body." This shows an uncertain cause of death through the

2.

expert witness testimony, even though she said that 'in her opinion' the cause of death was the neck slitting with asphyxiation being a "contributing factor", but, which one actually killed the victim? Let us not also forget that the victim allegedly ran from the Petitioner and he allegedly stopped giving chase after realizing he was on probation. The State never proved that Petitioner choked the victim nor killed her in this manner.

In the second prong, ~~prong~~ two members of the Grand Jury were brought in to describe what actions they took to determine the cause of death. One of them testified to not knowing or remembering if testimony or evidence was presented to them as to the investigation of the cause of death. The other testified the issue was brought up, but was not sure of the cause of death or the actions taken to find a cause of death. The expert witness herself did not give an alternate theory or testify that the cause of death was unknown. this meant that the cause of death was established by the trial testimony (even though it was still an opinionated unsure cause).

But the problem still lies that theState did not provide sufficient evidence to support all of their theories alleged in the indictment. Sanchez v. State, 221 S.W.3d 769 (Tex.App. - Corpus Christi 2007) at 776 ("... the State was required to prove that the Grand Jury used due diligence in attempting to ascertain the cause of death. However, the State offered no evidence on this subject. Therefore, there was <u>insufficient</u> evidence to support the theories of prosecution alleged in the... paragraphs of the indictment... Consequently, the trial court erred in authorizing the jury to convict appellant under those theories of prosecution.)(emphasis in original). The appellant never stated or implied that he choked or was the one who choked the victim. This was assumed by the State, but never proven.

Ground #2: <u>Trial Court Refused to Suppress the Detective's Unsworn Statements During Interrogation.</u>

During pre-trial the Petitioner - through the actions of his counsel - filed two documents entitled "Specific Objections to Portions of Tape Recording 9-25-12" and "8-19-12", both of them identifying the objectionable parts of these interrogations. The only way of locating these items on the video were by the elapsed time counter values on the original recordings - that were not the same shown to the jury - which were changed after being heavily edited and after the parts objected to were listed. The jury never had a chance after being edited to see the original recordings and therefore, never known what was supposed to be redacted.

3.

The counter values were rendered useless after the heavy editing done by the State because after the editing, the counter values were reset and therefore, the parts asking to be redacted/suppressed by the Petitioner and his attorney were now moved to different locations on the elapsed time counter on each exhibit. These parts were in fact the unsworn statements and comments made by the detectives that were asked to be suppressed. By the trial court's abuse of discretion, this harmed the Petitioner. "Generally, when a motion to suppress is overruled, a defendant need not object at trial to the same evidence in order to preserve error for appellate review." Flores v. State, 215 S.W. 3d 520, 531 (citing Ebarb v. State, 598 S.W.2d 842, 843 (Tex.Crim.App. 1979).

In Lyles v. State, 850 S.W.2d 497, 502 (Tex.Crim.App. 1993) it states, "It was arbitrary and unreasonable for the court to admit unsworn testimony. Thus, it was an abuse of discretion." Once the Petitioner and his counsel realized that the parts of the tapes that were supposed to be redacted were still there, they asked the court for a limiting instruction for the jury not to consider the statements of the detectives as evidence, but only of the statements of the Petitioner. By the court not allowing a suppression of the comments of the detectives or the limiting instruction, the court abused it's discretion and harmed the Petitioner.

Ground #3: <u>Trial Court Erred in Refusing to give Jury Charge/Instruction of Self Defense.</u>

Ground #5: <u>Trial Court Erred in Refusing to Give Jury Charge/Instruction on Not to Consider Comments of Detectives in Recorded Interrogations of Appellant as Evidence.</u>

Because these two grounds are interrelated, they will be argued together to show relativity. It is well understood that a court reviews issues of the trial court refusing to give a jury instruction by viewing the evidence in the light most favorable to the defendant. Bufkin v. State, 207 S.W.3d 779, 782 (Tex.Crim.App. 2006).

A trial court must give a requested instruction on every defensive issue raised by the evidence without regard to its source or strength, even if the evidence is contradicted or not credible. "A defense is supported (or raised) by the evidence if there is <u>some evidence</u>, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that that element is true." Krajcovic v. State, 393 S.W.3d 282, 286 (Tex.Crim.

4.

App. 2013)(emphasis added).

The State tries to conclude in their argument that the Petitioner's counsel's strategy was to characterize the self-defense statements during his second police interview as being involuntary made. This was not the case. Even though, arguendo, the State nor the Court are not the ones to test the credibility or weight of the evidence, the Petitioner was still entitled to these instructions. " The absence of this type of instruction is generally harmful because its omission leaves the jury without a vehicle by which to acquit a defendant who has admitted to all the elements of the offense. See, e.g. Johnson v. State, 271 S.W.3d 359, 368-69 (Tex.App. – Beaumont 2008 pet. Ref'd)(omission of self-defense instruction harmful)... In general, when there is a single offense tried before a jury, it is impossible to determine how a jury would have weighed the credibility of the evidence on a defensive issue, and, therefore, appellate courts have reversed convictions in order to permit the jury to decide whether it believes the defensive evidence." Cornet v. State, 417 S.W.3d 446, 451 (emphasis added).

By not granting these instructions to the jury, which were vital to the outcome of the trial, the Petitioner was harmed." The court of appeals explained that the standard for assessing "the actual degree of harm" requires an appellate court to consider the totality of the record, including "[A] the entire jury charge, [B] the state of evidence, including the contested issues and weight of probative evidence, [C] the argument of counsel, and [D] any other relevant information revealed by the record of the trial as a whole."" Almanza v. State, 686 S.W.2d at 171. "... a review for sufficiency of the evidence cannot substitute for harm analysis. See Sanchez v. State, 376 S.W.3d at 772 ("The court of appeals erred in applying the Hicks rule to charge-error complaints when it was a sufficiency-of-the-evidence Rule")"(emphasis added).

See also Robertson v. Cain, 324 F.3d 297 (5th Cir. 2003) at 305 (...the Petitioner should prevail whenever the record is so evenly balanced that a conscientious judge is in grave doubt as to the harmlessness of the error. O'Neil v. McAninch, 513 U.S. 432, 436). id., supra at 309(...the erroneous jury instruction did not merely omit the requirement that the jury find specific intent to kill; it effectively told the jury that they could ignore Robertson's evience as it related to this point and convict Robertson of first degree murder without actually finding that Robertson had a specific intent to kill Hardy and Jones. Based on our consideration of the record, we seriously doubt that the

5.

jury actually evaluated the evidence with the purpose of determining whether Robertson had a specific intent to kill Hardy and Jones. Accordingly, we are left with the conclusion that the state trial court's erroneous jury instruction did have a "substantial and injurious effect or influence in determining the jury's verdict." Brect v. Abrahamson, 507 U.S. at 637, 113 S.Ct. 1710.).

## Ground #4: Trial Court Erred in Refusing to Give Jury Charge/Instruction of Lesser Included Offense of Murder or Manslaughter.

Per Texas Penal Code §19.03(c)(Capitol Murder), it states:

> (c) If the jury... does not find beyond a reasonable doubt that the defendant is guilty of an offense under this section, he may be convicted of murder or any other lesser included offense."

The prosecutor during trial requested to the judge to give the jury an instruction on a lesser included offense. This, in turn, was shot down by the judge, denying the Petitioner of a lesser included offense and not following statute. This harmed the Petitioner in more ways than one.

Moore v. State, 969 S.W.2d 4?8 states that "Any evidence that the defendant is guilty only of the lesser included offense is sufficient to entitle the defendant to a jury charge on the lesser included offense." (emphasis added, citation omitted). It also stated that "It is not the court's function to determine the weight to be given the evidence; rather it is the jury's duty under proper instruction, to determine whether the evidence is credible and supports the lesser included offenses." id. at 10 (emphasis added).

"Capitol Murder is such a murder (in some subsections it must be an intentional murder; in others it may be an intentional and knowning muder) with an additional element. Therefore murder is a lessor included offense of capitol murder under Code of Criminal Procedure Article 37.09(1)... If in a capitol murder case there is some evidence before the jury that would permit it to rationally find that a defendant committed the requisite of murder under Section 19.02(a)(1), but that the additional element in Section 19.03 was not proved, then the defendant is entitled to a charge of the lesser included offense of murder... See Tex. Penal Code §19.03(c)." id. at 12. And also, "...if the actor intentionally and knowingly causes the deaths of two individuals during the same criminal transaction, but one of the killings was justified under the law, then the person has committed only one murder. Therefore the murder could not be a capitol murder under Penal Code §19.03(a)(7)(A), because the actor did not "murder more than one person." The argument is well taken, and the terms of the statute compel us to accept it."(emphasis strongly added).

6.

Most of the elements of the Petitioner's culpable mental state of whether he intentionally and/or knowingly killed both the victim and her unborn child were not proven and each element of the offense has to be proven under the statute. By denying the Petitioner the jury instruction of the lesser included offense, it forced the jury to find the Petitioner guilty of Capitol Murder. U.S. v. Hernandez, 476 F.3d 791, 798 "... to warrant a lesser included offense instruction "the evidence attrial must be such that a jury could find the defendant guilty of the lesser included offense, yet acquit him of the greater." ...We review this step of the inquiry for abuse of discretion."

The court took it upon itself to weigh the evidence and determine that the Petitioner should not have a lesser included offense instruction and tied the jury's hands as to the issue. The court is the one who compelled the jury's guilty verdict on Capitol Murder. "The harm from denying a lessor offense instruction stems from potential to place the jury in the dilema of convicting for a greater offense in which the jury has reasonable doubt or releasing entirely from criminal liability a person the jury is convinced is a wrongdoer." Flores v. State, 215 S.W.3d 520, 531 (Tex.Crim.App. - Beaumont 2007)(citing Masterson, 155 S.W.3d at 171). "Whether in any particular case a defendant's conduct can be snown to have cuased the death of an unborn child is a question of proof, not a question of the constitutionality of the statute." id. at 527.

The court took it upon itself to determine that his actions, and not the actions of the victim was the cause of the unborn child's death. Or rather yet, assuming his actions were the cause, they did not give him the lesser included offense instruction or self-defense instruction to at least determine one of the murders as justified. "Under Kotteakos, the error is reversible "if one cannot say, with fair assurance,... that the judgement was not substantially swayed by the error." id. at 765, 66 S.Ct. 1239. That is, if the error itself had a"substantial influence" on the judgement, then it is not harmless... even under the more lenient standard of Kotteakos, the district courts refused to instruct the jury on the lesser included offense... was not harmless." U.S. v. Hernandez, 476 F.3d 791, 801.

> "Faced with a defendant who was unequivocally guilty of some possession crime, the jury had a choice between convicting Hernandez with possession with intent to distribute or acquitting him. It is not possible to say with confidence tha the jury chose the former option because the government met its burden... The jury may have decided that given the overwhelming evidence against Hernandez, it did not want to acquit him of that charge, and so chose the only other option available to it - conviction of in-

7.

tent to distribute methanphetamine... Eliminating the option of finding Hernandez guilty of simple possession from the jury's province, under the circumstances of this case, substantially influenced the verdict and was not harmless error. The error of not giving the lesser included jury instruction... in this case was fatal to the conviction... and that conviction cannot stand."

-id. at 802

Neither can this conviction of capitol murder against the Peitioner.

Ground #6: Trial Counsel was Ineffective by not Asking the Court/Judge for a Jury Charge/Instruction of a Lesser Included Offense of Murder or Manslaughter.

Ground #7: Trial Counsel was Ineffective by not Timely Asking for a Limiting Instruction When the Court Admitted the Published Video.

Petitioner's trial counsel, Larry M. Moore, failed to timely object to the recorded interrogations for the requested limiting instructions and failing to ask for a lesser including offense instruction which was asked for by the Prosecutor.

The Texas Court of Criminal Appeals has explained that a limiting instruction should be first requested "when the evidence is admitted and then again at the final jury charge." Hammock v. State, 46 S.W.3d 889, 895 (Tex.Crim.App. 2001). The trial counsel only fulfilled the final jury charge portion of this requirement and abandoned the first part. Even though the counter values were changed in the videotapes, it was the trial counsel's duty to know and state specifically the parts of the videotapes which were being requested to be suppressed and omitted, not just naming the counter values. See Kimmelman v. Morrison, 477 U.S. 365, 375-76.

The negligence on the trial counsels part concearning this matter hurt the Petitioner and caused the court not to accept the untimely-requested limiting instruction. "[I]f a defendant does not request a limiting instruction... at the time that the evidence is admitted, then the trial judge has no obligation to limit the use of that evidence later in the jury charge." Delgado v. State, 235 S.W.3d 244, 251 (Tex.Crim.App. 2007).

By the trial counsel not asking, nor objecting to the denial to a lesser included offense instruction – which is guaranteed by the statute/code of §19.03 (c) – the trial counsel was ineffective in this respect and no rational thought of trial strategy can be shown to justify this. The fact that the Prosecutor had to ask for a lessor included offense instruction says much about this fact. An instruction on a lesser included offense could have at least afforded the Petitionera chance to be found guilty of one of many lesser included offenses

8.

of capitol murder, saving the Petitioner from a Life without Parole sentencing. This prejudiced the Petitioner.

## PRAYER

Wherefore, upon the foregoing arguments, the Petitioner prays the Court GRANT this Petition and relief and reverse his conviction or grant any relief this court may deem necessary.

Respectfully Submitted,

Johnny Calvin Scott, Jr.

## CERTIFICATE OF SERVICE

I, Johnny Calvin Scott, do hereby certify that the foregoing Petition for Discretionary Review was mailed by prison staff by me placing the same in the BILL CLEMENTS UNIT prison mailbox system on September 28, 2015 U.S.P.S. First Class mail, postage pre-paid, addressed to:

Texas Court of Criminal Appeals
P.O. Box 12308
Capitol Station
Austin, Texas 78711


JOHNNY CALVIN SCOTT                                                    APPELLANT

V.

THE STATE OF TEXAS                                                          STATE

----------

FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 1359184R

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant Johnny Calvin Scott appeals his conviction and life sentence for capital murder in the death of his girlfriend Vanessa Murrell and of her unborn child. In three issues, Scott argues that he was entitled to a self-defense instruction; that the trial court improperly admitted hearsay statements made by

---

[1]*See* Tex. R. App. P. 47.4.

the homicide detectives during the police interrogation of Scott, which was video recorded; and that he was entitled to a limiting instruction on the admission of the video containing the complained-of statements. We will affirm.

## II. BACKGROUND

A stranger stumbled upon Murrell's body, slumped against the base of a tree in a vacant lot with her neck slit. At the time of her death, Murrell was approximately thirteen weeks pregnant, and her unborn child died in utero without Murrell alive to sustain him.

On the day Murrell's body was found, officers arrested Scott in an unrelated incident. Officer Paul Garcia and other officers were canvasing neighborhood carwashes that attracted various criminal activity. As the officers approached one carwash, Officer Garcia saw Scott cutting across an empty private lot behind the carwash. Officer Garcia stopped Scott and asked to see a form of identification; Scott responded that he did not have one. After Officer Garcia again requested to see some identification, Scott "took off running." Officer Garcia and other officers chased Scott, and they eventually found him hiding in an abandoned house. Officer Garcia arrested Scott for trespassing on the private lot and for evading arrest. Officers later discovered that Scott had violated his parole and was the subject of outstanding warrants.

Officer Frederick Myers transported Scott to the police station. While in the parking lot at the station, Officer Myers allowed Scott to use Officer Myers's phone, and Scott called his sister. Something Scott's sister said agitated Scott,

2

and he explained to Officer Myers that his sister had just accused him of killing his girlfriend. At that moment, Detective Kyle Sullivan, who was already investigating Murrell's death, arrived in the parking lot. After Officer Myers related to Detective Sullivan what he had overheard, Scott was taken to an interview room.

Detective Sullivan and Detective Jeremy Rhoden interviewed Scott. Scott acknowledged having had an argument with Murrell the day before, but he denied harming her. He said that after their argument, they parted ways and that he had not seen her since then. During the interview, Detective Rhoden noticed spots that looked like blood on Scott's jeans. Scott's jeans were submitted to the Fort Worth Police Department crime lab for testing, and a senior forensic scientist for that lab confirmed at trial that some of the blood spots contained both Scott's and Murrell's DNA. Scott's DNA was also found under Murrell's nails.

After the interview, Detective Rhoden contacted Donald Halliburton, the person with whom Scott and Murrell had been staying. Haliburton gave a statement, detailing the fight between Murrell and Scott. Haliburton said that after Murrell had left, he had overheard Scott saying that he was going to kill Murrell. Haliburton remembered that Scott then left the house and did not return until four or five the next morning. A friend of Haliburton's, who was at his house the day before the murder, testified that Scott said that he planned to hurt Murrell—to "cut her up."

3

After a week-long trial, the jury found Scott guilty of capital murder, and the trial court sentenced him to life imprisonment. Scott then perfected this appeal.

### III. OMISSION OF SELF-DEFENSE INSTRUCTION WAS HARMLESS

In the course of investigating Murrell's death, the detectives interviewed Scott a second time. That interview was also recorded; in addition to the evidence set forth above, the jury also viewed the video of the second interview. During the second interview, Scott claimed that Murrell had brandished a box cutter during the argument and that he had reacted by grabbing Murrell's arm that held the box cutter and by twisting it back against her, cutting her on the left side of her neck—the side that was, in fact, slit. Scott said that Murrell then fled and that although he initially followed her to see if she was okay, he remembered he was on probation and instead walked to Haliburton's house and went to sleep. Later in the interview, Scott abandoned his self-defense story and again insisted he had nothing to do with Murrell's death.

Detective Rhoden testified at trial that there was no evidence Murrell ran after her neck had been slit. Based on the way the blood flowed from Murrell's neck, Detective Rhoden concluded that her neck had been slit while she was lying down.

The evidence also revealed that in addition to having her neck slit, Murrell had also been strangled, as evidenced by the location, number, and pattern of petechiae, or small dot hemorrhages, on her upper neck and face. Dr. Susan Roe, the medical examiner who performed the autopsy on Murrell's body,

4

testified that someone had strangled Murrell using broad pressure, consistent with an arm, applied to the neck. Based on the nature of the petechiae, Dr. Roe understood that the pressure on Murrell's neck had been applied for a "fair amount of time" and not "just a moment." Dr. Roe also noted that the strangulation occurred while Murrell was alive; otherwise, the dot hemorrhages would have emerged in areas of lividity, the areas in which blood pools in a body lacking a heartbeat. That observation in combination with the fact that Murrell's heart was still pumping when her neck was slit, as evidenced by the amount of blood pumped from the cut, convinced Dr. Roe that the strangulation preceded the neck slitting. Dr. Roe further testified that the neck slitting would have caused death within thirty to forty seconds, which was too brief to create the petechiae observed on Murrell's body. Dr. Roe identified the cause of death to be the neck slitting with asphyxiation being "a contributing factor."

In his first issue, Scott argues that the trial court erred by denying his requested jury instruction on self-defense. Scott contends that his brief admission—that he had slit Murrell's neck as he had attempted to restrain her arm after she had pulled out a box cutter and began slashing at him—is some evidence to support including a self-defense instruction in the jury charge.

## A. Standard of Review

A trial court must give a requested instruction on every defensive issue raised by the evidence without regard to its source or strength, even if the evidence is contradicted or not credible. *Krajcovic v. State*, 393 S.W.3d 282, 286

5

(Tex. Crim. App. 2013). A defense is supported (or raised) by the evidence if there is some evidence, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that that element is true. *Id.*

Our review of a purported jury-charge error is a two-step process. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). We first determine whether error occurred; if error did not occur, our analysis ends. *Id.* If error occurred, whether it was preserved determines the degree of harm required for reversal. *Id.* If there was a timely objection, as in this case, the existence of jury-charge error will be reversed if the error was "calculated to injure the rights of [the] defendant," which means no more than that there must be *some* harm to the accused from the error. *See* Tex. Code Crim. Proc. Ann. art. 36.19 (West 2006); *Abdnor v. State*, 871 S.W.2d 726, 732 (Tex. Crim. App. 1994); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); *see also Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013); *Wooten v. State*, 400 S.W.3d 601, 606 (Tex. Crim. App. 2013). In other words, a properly preserved error will require reversal unless the error is harmless. *Almanza*, 686 S.W.2d at 171. This analysis requires us to consider (1) the jury charge as a whole, (2) the arguments of counsel, (3) the entirety of the evidence, and (4) other relevant factors present in the record. *Reeves*, 420 S.W.3d at 816; *see Almanza*, 686 S.W.2d at 171.

## B. Analysis

Assuming that Scott's quickly-abandoned assertion that Murrell had attacked him with a box cutter warranted a self-defense instruction and assuming that the trial court erred by failing to give such an instruction, we analyze whether Scott suffered some harm from the omission of a self-defense instruction in the charge. Looking first to the jury charge as a whole and defense counsel's closing argument, both reflect that the defense's strategy was to characterize Scott's self-defense statements during his second police interview as involuntarily made. Before trial, Scott moved to suppress the statements recorded in the second interrogation on the ground that they were involuntarily made. One of the two witnesses for the defense, Antoinette McGarrahan, a psychologist, extensively testified for the "sole purpose," as expressed by defense counsel in closing argument, of showing that Scott's limited cognitive abilities precluded a knowing and voluntary waiver of his *Miranda* rights. The other defense witness testified that Scott had been with her the night Murrell was killed. The jury charge instructed that Scott's interrogation statements could not be considered unless they were knowingly, intelligently, and voluntarily given.[2] And in closing argument, defense counsel argued extensively that the jury should disregard Scott's statement that he had forced Murrell's hand back so that the box-cutter cut her neck, insisting that Scott had uttered this statement involuntarily because

---

[2]*See Miranda v. Arizona*, 384 U.S. 436, 475, 86 S. Ct. 1602, 1628 (1966).

7

he lacked the intelligence to understand the *Miranda* warnings he had received and because the interrogating detectives pressured him. Thus, reviewing the jury charge and the arguments of counsel in our harm analysis, this is not a case in which the jury was "without a vehicle by which to acquit a defendant who has admitted to all the elements of the offense." *Cornet v. State*, 417 S.W.3d 446, 451 (Tex. Crim. App. 2013) (explaining harm generally associated with a denied self-defense instruction); *see, e.g., Beckstrand v. State*, No. 02-12-00480-CR, 2015 WL 1544077, at *10 (Tex. App.—Fort Worth Apr. 2, 2015, no pet. h.) (mem. op., not designated for publication) ("Because Appellant admitted striking Noah, without the self-defense instruction, Appellant admitted the offense."). Instead, this is a case in which trial counsel's request for a self-defense instruction "appears to be an afterthought and does not appear to be the primary focus of his defensive theory at trial." *Cornet*, 417 S.W.3d at 455. In fact, even had the jury been instructed on self-defense, the defense itself had already discredited Scott's self-defense story as involuntarily made and had secured an instruction telling the jury to disregard all involuntary statements.

Looking at the entirety of the evidence, Scott's self-defense story was undermined throughout the trial. The jury heard Scott abandon his self-defense story almost immediately after telling it in the second interview. The other defense witness—besides the psychologist—testified that Scott had been with Murrell on the night she was killed, and other evidence demonstrated that a few hours before Murrell was killed, Scott angrily told her that he was going to kill her

8

and told others that he was going to "cut her up." There was no evidence of a struggle, and there was no evidence that Murrell ran after having her neck slit. Additionally, Scott's self-defense story did not fully explain Murrell's injuries, particularly the strangulation. Although the evidence demonstrated that Murrell had been strangled for what Dr. Roe said was a "fair amount of time" before having her neck slit, Scott did not mention strangulation in his self-defense story.

Furthermore, in assessing other relevant factors in the record, we note that the indictment and jury charge premised the capital murder charge on either slitting or strangulation, so even had the jury been instructed on self-defense, it would have been unable to conclude that Scott strangled Murrell in self-defense.

Having performed the harmless-error analysis mandated by *Reeves, Wooten,* and *Almanza,* we conclude that any harm in denying Scott's request for a self-defense instruction was harmless. *See Reeves,* 420 S.W.3d at 816; *Almanza,* 686 S.W.2d at 171. We overrule Scott's first issue.

## IV. DETECTIVES' STATEMENTS DURING INTERROGATION DO NOT CONSTITUTE HEARSAY

In his second issue, Scott argues that the trial court abused its discretion by refusing to suppress the unsworn statements that the detectives made during the video-recorded interview of Scott. Scott contends that the unsworn statements made by the detectives while they interviewed him constitute hearsay.

We review the trial court's admission of the video of the interview containing the complained-of statements under an abuse-of-discretion standard. *See Ramos v. State*, 245 S.W.3d 410, 417–18 (Tex. Crim. App. 2008); *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000); *Kirk v. State*, 199 S.W.3d 467, 478 (Tex. App.—Fort Worth 2006, pet. ref'd). We will uphold the admission so long as it falls within the zone of reasonable disagreement. *See Weatherred*, 15 S.W.3d at 542; *Kirk*, 199 S.W.3d at 478.

Hearsay is a statement, other than one made by the declarant while testifying at trial, offered to prove the truth of the matter asserted. Tex. R. Evid. 801(d). Statements by interrogating officers that seek to elicit or gauge a defendant's response and are admitted as part of the recorded interrogation generally are not offered to prove the truth of the matter asserted. *See Kirk*, 199 S.W.3d at 478–79; *see also Wood v. State*, No. 01-13-00845-CR, 2014 WL 5780273, at *5 (Tex. App.—Houston [1st Dist.] Nov. 6, 2014, pet. ref'd) (mem. op., not designated for publication); *Fincher v. State*, No. 04-12-00489-CR, 2013 WL 5429928, at *2 (Tex. App.—San Antonio, Sep. 25, 2013, pet. ref'd) (mem. op., not designated for publication); *Humphrey v. State*, No. 01-08-00820-CR, 2012 WL 4739925, at *2 (Tex. App.—Houston [1st Dist.] Oct. 4, 2012, no pet.) (mem. op., not designated for publication). The relevance of statements by interrogating officers hinges on the defendant's response rather than on the statements' content. *See Kirk*, 199 S.W.3d at 478–79; *see also Wood*, 2014 WL 5780273, at *5; *Fincher*, 2013 WL 5429928, at *2. *Humphrey*, 2012 WL 4739925,

10

at *2. This is true even if the statements, like the ones challenged by Scott, accuse the defendant of lying, express suspicion that the defendant was involved, or misrepresent the evidence. *See Kirk*, 199 S.W.3d at 478–79; *Wood*, 2014 WL 5780273, at *5; *Fincher*, 2013 WL 5429928, at *2; *Humphrey*, 2012 WL 4739925, at *2.

Consistent with the general rule, the statements at issue in this case were not admitted for their truth. For example, the detective's statement—"God blessed me with catching the killer of Vanessa Murrell"—was not offered to prove its theological content but as part of the context of Scott's interview. Nor were the detectives' statements expressing suspicion that Scott was involved in Murrell's death admitted to prove that the officers were, in fact, suspicious. The statements invited Scott to respond and allowed the officers to assess his honesty. Additionally, when the State questioned Detective Rhoden, it targeted Scott's changing demeanor in his responses—he replied with more hesitance and gave more disjointed responses—once he had abandoned the self-defense story. Moreover, the detective's inaccurate statement implying that only Scott's DNA was under Murrell's fingernails was designed to challenge Scott's version of the events, and the jury even heard Detective Rhoden acknowledge during cross-examination that the statement was inaccurate.

Because the complained-of statements are not hearsay, we hold that the trial court did not abuse its discretion by denying Scott's request to suppress them. *See Kirk*, 199 S.W.3d at 478–79; *see also Wood*, 2014 WL 5780273, at

*5; *Fincher*, 2013 WL 5429928, at *2; *Humphrey*, 2012 WL 4739925, at *2. We overrule Scott's second issue.

## V. LIMITING INSTRUCTION NOT TIMELY REQUESTED

In his third issue, Scott argues that the trial court should have included in the jury charge his requested limiting instruction telling the jury to consider only his responses to the detectives' statements during the recorded interrogations.

The Texas Court of Criminal Appeals has explained that a limiting instruction should first be requested "when the evidence is admitted and then again at the final jury charge." *Hammock v. State*, 46 S.W.3d 889, 895 (Tex. Crim. App. 2001). This is because "it is impossible for the jury to go back at the close of the trial and reassess the evidence in light of the limiting instruction, even if they could appreciate which items of evidence the instruction was supposed to apply to." *Id.* (citation omitted). When the evidence in question is admitted for all purposes, a limiting instruction on the evidence is not "within the law applicable to the case," and the trial court is not required to include the limiting instruction in the jury charge. *Id.*

Here, the record reveals that Scott did not request the limiting instruction when the trial court admitted and published the video; instead, Scott requested the limiting instruction at the jury-charge conference after the close of evidence. The video that included the detectives' statements was therefore admitted for all purposes, and thus the trial court was not required to include the limiting instruction in the jury charge. *See id.* We therefore hold that the trial court did

12

not err by refusing to include Scott's untimely-requested limiting instruction in the jury charge. *See id.*; *see also Delgado v. State*, 235 S.W.3d 244, 251 (Tex. Crim. App. 2007) ("[I]f a defendant does not request a limiting instruction . . . at the time that the evidence is admitted, then the trial judge has no obligation to limit the use of that evidence later in the jury charge."); *Freeman v. State*, 413 S.W.3d 198, 208 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (holding same); *Taylor v. State*, No. 02-11-00092-CR, 2012 WL 955383, at *7 (Tex. App.—Fort Worth Mar. 22, 2012, no pet.) (mem. op., not designated for publication) (same). We overrule Scott's third issue.

## VI. CONCLUSION

Having overruled Scott's three issues, we affirm the trial court's judgment.

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL: LIVINGSTON, C.J.; WALKER and SUDDERTH, JJ.

SUDDERTH, J., concurs without opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: June 4, 2015

13